TIMM R. REYNOLDS, Plaintiff-Appellee, *v.* BERNARD A. HEEREY, Defendant-Appellant.

First District (4th Division)    No. 79-1642

Opinion filed August 28, 1980.

William J. Stevens, of Foss, Schuman & Drake, of Chicago, for appellant.

McDermott, Will & Emery, of Chicago (Robert T. Palmer, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The defendant, Bernard Heerey, appeals from orders of the circuit court of Cook County which granted summary judgment in favor of the plaintiff, Timm Reynolds and directed Heerey to remove a fence and guardrail from Reynolds' property. On appeal, Heerey argues the trial court erred in granting summary judgment because genuine issues of fact exist concerning (1) the location of the boundary between the parties' properties; (2) the defense of adverse possession; and (3) whether the alleged encroachments were unintentional and minimal.

Reynolds and Heerey are abutting landowners along a 53-foot boundary running north/south between their properties. East Walton

Street is the northern boundary of both properties. Heerey's property is bounded by North State Street to the west, by real estate to the south, and by Reynolds' property to the east. Reynolds' property is bounded by Heerey's property to the west, by real estate to the south, and by an alley to the east.

On July 28, 1978, Reynolds filed a complaint for injunctive relief alleging that in February 1978, Heerey erected a fence and guardrail which encroached upon Reynolds' property. In his August 11, 1978, answer, Heerey admitted that the fence and the guardrail were erected but denied that they encroached onto Reynolds' property.

Reynolds filed two surveys which showed that Heerey's fence and guardrail encroached upon Reynolds' property. One of these surveys, prepared by Chicago Guarantee Survey Company (Guarantee), was commissioned by Heerey. The other survey, prepared by National Survey Service, Inc. (National), was commissioned by Reynolds. The Guarantee survey shows the northern boundary of Heerey's property as 95.92 feet and the northern boundary of Reynolds' property as 25.00 feet. Heerey's southern boundary is 95.82 feet, and Reynolds' is 25.01 feet. According to the National survey Heerey's northern boundary is 96.04 feet and Reynolds' is 25.00 feet. This survey shows Heerey's southern boundary as 95.983 feet. It does not indicate the length of Reynolds' southern boundary. Reynolds filed the affidavit of his surveyor which stated that Heerey's fence and guardrail encroached onto Reynolds' property. Deposition testimony of both surveyors was introduced.

The only evidence introduced by Heerey to refute Reynolds' evidence were certified copies of two recorded plats of subdivisions concerning the subject property. The earlier plat is dated 1836 and subdivided a one-half mile strip of property into 23 blocks. The plat shows the dimensions of each block. The blocks are not subdivided into lots. Reynolds' lot and Heerey's lot would be located on block 12. The later plat is dated 1886. This plat subdivided the east two-thirds of block 12 into 11 lots. It shows the dimensions of block 12 and of each of the 11 lots on the east two-thirds of block 12. Reynolds' property is lot 7. Its northern boundary is shown as 25.00 feet. Heerey's lot is not shown as it presently exists but would be located in the unsubdivided west one-third of block 12.

The northern boundary of block 12 is shown as 262.68 feet on the 1836 plat. The 1886 plat shows this boundary to be 259.20 feet. According to a surveyor's exhibit prepared for Heerey, the actual ground measurement of the northern boundary of block 12 was 259.17 feet at the time of the proceedings below.

Heerey's first contention is that the trial court erred in granting summary judgment against him because the 1836 plat shows the northern

boundary of block 12 as 3.48 feet longer than does the 1886 plat. He argues that this discrepancy raised an issue of material fact as to the location of the boundary between his and Reynolds' property and therefore as to whether his fence and guardrail encroach onto Reynolds' property.

Heerey introduced no evidence below concerning how the 3.48-foot discrepancy would affect the location of the boundary between his and Reynolds' properties. While the 1886 plat shows a 3.48-foot shortage along the northern line of block 12 as compared with the 1836 plat, Heerey introduced nothing to indicate where this shortage existed. Conversely, Reynolds introduced strong evidence that the 3.48-foot discrepancy had no effect on the size of his or Heerey's lot or upon the location of the boundary between the lots. Further, he introduced two surveys, an affidavit, and deposition testimony which clearly described the location of the two properties and their dimensions, and the fact of and location of the encroachment by Heerey onto Reynolds' land.

■■ We conclude that the evidence presented in support of and in opposition to the motion for summary judgment when construed strictly against Reynolds and liberally in favor of Heerey reveal no genuine issue as to any fact material to the issue of whether Heerey's fence and guardrail encroach onto Reynolds' property.

On appeal Heerey argues that under the so-called "apportionment rule" it can reasonably be inferred that the 3.48-foot discrepancy negates Reynolds' claim of encroachment. He relies on the following language in *May v. Nyman* (1972), 3 Ill. App. 3d 580, 585, 278 N.E.2d 97, 101:

> "We are not unaware of the fact that our court can in certain cases follow the apportionment rule which provides that where a tract of land is subdivided into parts or lots, title to which becomes vested in different persons, none of the grantees is entitled to any preference over the others on discovery of an excess or deficiency in the quantity of land contained in the original tract; and the excess must be divided among or the deficiency must be borne by all of the parts or lots in proportion to their areas."

In *May* a plat showed that the frontage line of 12 lots numbered 1 through 12 measured 1213.2 feet. The line actually measured 1200.0 feet. It was held that this discrepancy did not in and of itself establish that there was any shortage in the subject property because there was no showing as to where along the frontage line the shortage existed. Therefore, the court declined to apply the apportionment rule.

■■ The *May* decision does not set forth the circumstances under which the apportionment technique will be applied and does not describe how any excess or deficiency will be added or subtracted. There is nothing in *May* to indicate that the apportionment technique is appropriate here or

that its application would have any effect on the location of the boundary between Heerey's and Reynolds' properties. Therefore, Heerey's citation of *May* does not alter our conclusion that he did not raise a genuine issue of material fact concerning the location of the boundary between his property and Reynolds' or concerning whether his guardrail and fence encroach upon Reynolds' property.

We next consider the adverse possession issue. On February 16, 1979, Heerey filed an affidavit in which he stated *on information and belief* that for more than 20 years prior to 1977 there was a building standing on his property and that the guardrail and fence were erected in the same place as was occupied by the east wall of the building. Heerey's deposition testimony confirms that he was without personal knowledge concerning whether the guardrail and fence were actually erected where the east wall of the building had been.

In opposition to the claim of adverse possession, Reynolds filed the affidavit of Nicholas Raimondi and a plat of survey done by Raimondi in 1967, at which time the building on Heerey's property was still standing. The affidavit stated and the survey plat showed that the former building had not encroached on Reynolds' building line except that at 21.5 feet south of the northeast corner of Heerey's lot the building encroached 1.32 inches, at 35.80 feet south of the northern corner the facebrick encroached 1.56 inches, and at the southeast corner of the lot the building encroached .48 inches. Conversely the affiant's 1978 survey, which located the boundary line in the same spot as the 1967 survey, shows that the fence was located on the northern part of the boundary line between Reynolds' and Heerey's properties. It encroaches 4.32 inches at the northern end of the fence and 6.0 inches at the southern end of the fence. The guardrail runs from the southern end of the fence along the remainder of the boundary line. The west face of the guardrail encroaches 1.80 inches at its northern end and 4.2 inches at its southern end. The east face of the rail encroaches further than the west face. The guardrail posts encroach further than either the east face or west face of the guardrail.

■■ Supreme Court Rule 191(a) requires that affidavits filed in support or in opposition of motions for summary judgment be based upon personal knowledge. (Ill. Rev. Stat. 1977, ch. 110A, par. 191(a).) The function of these affidavits is to show whether issues raised are genuine and whether or not each party has competent evidence to offer which tends to support his side of the issue. *Anger v. Gottfried* (1975), 29 Ill. App. 3d 559, 331 N.E.2d 576; *Anderson v. Dorick* (1975), 28 Ill. App. 3d 225, 327 N.E.2d 541.

■■ Heerey's affidavit failed to conform with the Rule 191(a) requirement that statements be on personal knowledge, and did not show that Heerey could competently testify to the information stated therein. His

deposition testimony, which confirmed that he had no personal knowledge of whether the guardrail and fence were erected where the building had been, established further that the claim of adverse possession was not genuine. Additionally, the affidavit and survey of Raimondi clearly refute Heerey's affirmative defense by showing that the fence and guardrail were not erected on the site of the former building. We therefore conclude that Heerey failed to establish the genuineness of his claim of adverse possession.

Heerey lastly argues that injunctive relief should have been denied because the encroachments are "only a few inches and unintentional." He cites *Stroup v. Codo* (1965), 65 Ill. App. 2d 396, 212 N.E.2d 518, for the proposition that the courts will ordinarily refuse to grant injunctive relief where an encroachment is slight and unintentional and the cost of removing it great and where the corresponding benefit to the adjoining landowner is small and damages can be had.

Only in his memorandum in opposition to Reynolds' motion for summary judgment does Heerey refer to the balance of hardships. He states, "[E]ven if fence and railguards, * * * do encroach on Mr. Reynolds' property, there is no harm done to Mr. Reynolds until such time as Mr. Reynolds has taken down his building." He states further that if Heerey did incur the economic cost of removing the fence and guardrails, it would not benefit Reynolds and would be "unnecessary." Heerey did not, in his memorandum or otherwise, allege that the encroachment was unintentional. Because Heerey did not properly raise the issue during the proceedings below we do not consider it on appeal.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

LINN, P. J., and JOHNSON, J., concur.