*In re* ESTATE OF THOMAS E. MOONEY, Deceased—(Agnes I. Mooney, Petitioner-Appellee, *v.* John M. Mooney, Indiv. and as Ex'r of a purported Last Will and Testament of Thomas E. Mooney, Deceased, *et al.*, Respondent-Appellants).

Third District   No. 82—816

Opinion filed September 7, 1983.

Timothy J. Rathbun and Max E. Zollner, both of McKeown, Fitzgerald, Zollner, Buck, Sangmeister & Hutchison, of Joliet, for appellants.

Bruce L. Zumstein, of Codo, Bonds, Zumstein & Konzelman, of Joliet, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

Thomas E. Mooney died on October 26, 1980, leaving a will in which he left property to two charities, to his brother John, and to his sister Mary. The decedent's sister Agnes Mooney was bequeathed a nominal sum of $100. Agnes Mooney filed a petition to contest the will in the circuit court of Will County, alleging that her brother John unduly influenced the decedent in the execution of the will, or in the alternative, that the decedent lacked testamentary capacity at the time the will was executed. The circuit court jury returned a general verdict finding for the contestant, Agnes Mooney. The executor appeals the jury verdict.

Thomas Mooney was 69 years old at the time of his death. The disputed will, which was filed for probate, provides that after pay-

ment of debts, funeral expenses, and costs of administration, bequests are to be made to Agnes Mooney in the sum of $100, to St. Jude Roman Catholic Church in the sum of $10,000, and to Christian Brothers of Lewis University in the sum of $2,500. The will further recites that the testator owns a 5/16th interest in the Mooney family farm, and Thomas Mooney directed that 1/16th of his farm interest be devised to his sister Mary Mooney, and 4/16th to his brother John Mooney. The residuary estate was divided equally between John and Mary, and John was appointed as executor of the will.

The Mooney family farm was located in Joliet, Illinois, and had been owned by the decedent's parents. Thomas Mooney, his sisters Agnes and Mary, his brother John, and his deceased sister Margaret, had been raised on the farm. In fact, John, Mary and the decedent had lived on the farm their entire lives. Agnes Mooney had left the farm as a young adult, and in the intervening years had become estranged from her brothers and sister. Thomas Mooney never married, he had no children, and had a limited elementary school education.

Since 1966, John Mooney had run the family farm. He collected all the farm income and paid the real estate taxes, living expenses, telephone bills, and electric bills. He made decisions as to what crops to plant, when to harvest them, and when to sell them. He managed the affairs of the decedent and Mary Mooney, providing them with funds for whatever in his opinion their needs were. Because the decedent was not licensed to drive an automobile, John Mooney provided transportation whenever that was necessary. In short, John Mooney held a dominant role with regard to his brother Thomas, and Thomas Mooney relied on his brother John in the conduct even of his day-to-day affairs.

In July 1979, Thomas Mooney fell and suffered a broken hip. From that time until his death, except for a brief period the following September, Thomas Mooney required hospitalization or nursing home care. In July of 1980, Thomas Mooney returned to the hospital from the nursing home because of a serious leg ailment. The following month, Thomas Mooney's doctors recommended a partial amputation of his leg to control a gangrenous condition. Thomas Mooney steadfastly refused the advice of his doctors, and declined to consent to the recommended surgery. Thomas Mooney's refusal to follow his physician's advice led his brother John to consult the family attorney, Dominic Boetto. Mr. Boetto suggested that John Mooney petition the court to appoint a guardian for his brother Thomas, a guardian who would have the authority to consent to the recommended amputation. A petition to the court was executed on August 29, 1980, and a pre-

liminary hearing on that petition was held on September 2. At that time John Mooney testified that his brother Thomas had been born with a slight mental defect, and that John had been taking care of his brother's financial arrangements for many years. Following the hearing, the court appointed John temporary guardian of the estate and person of Thomas Mooney. In addition, a hearing was scheduled for September 11, 1980, at the hospital room of Thomas Mooney.

The purpose of the September 11 hearing was to determine whether Thomas Mooney was competent to consent to the surgery which his doctors recommended. As the hearing concluded, it was unnecessary to determine whether John Mooney as court-appointed guardian should have the authority to consent to the recommended amputation, because at that time Thomas Mooney relented from his previous position and voluntarily authorized the surgeons to proceed. The amputation was performed the following day, but the decedent's condition worsened and he subsequently died on October 26, 1980.

Several weeks prior to the September 11 hearing John Mooney approached the family attorney, Dominic Boetto, and instructed the attorney to prepare a will for his brother Thomas. Mr. Boetto followed his instructions based upon information he received from John Mooney. Mr. Boetto never had a conversation with Thomas Mooney in Thomas' lifetime about the preparation of a will, nor did Thomas Mooney ever ask Mr. Boetto to prepare a will for him. When Mr. Boetto had completed the assignment which John Mooney had given him, he took the will to Thomas Mooney's hospital room along with two secretaries from his office. The will was there executed by Thomas Mooney, but subsequently lost.

Shortly afterwards, John Mooney called Mr. Boetto and advised him that the first will had been lost and again instructed Mr. Boetto to prepare a will for his brother. Mr. Boetto complied with this request and drafted a second will which was purportedly identical to the first. Again, Mr. Boetto brought the will he had drafted for Thomas Mooney to the latter's hospital room. On this occasion, the occasion of the September 11 hearing on the guardianship, Mr. Boetto did not cause the will to be executed, but instead he gave the document to John Mooney. Later that day, John Mooney called Fran Hudak and asked Fran to bring his son, Michael Hudak, to the hospital to act as witnesses to the will. John Mooney, the two witnesses, and Thomas Mooney were the only persons present in the hospital room when the document was signed, the document that is now the subject of this contest.

Based on this sequence of events, the Will County jury concluded

that the September 11 document was not the last will and testament of Thomas Mooney. The appellants, John M. Mooney and Mary L. Mooney, believe that the conclusion of the jury was against the manifest weight of the evidence.

▪ The contestant, Agnes Mooney, urged two grounds in the court below as a basis for setting aside the will which was offered for probate. First, she asserted that John Mooney exercised undue influence on his brother Thomas in the execution of the will. Secondly, she asserted that at the time the will was executed, Thomas Mooney lacked testamentary capacity. The jury returned a general verdict, and we are obliged to sustain that verdict if there is sufficient evidence to support either of the grounds asserted below. (*Butler v. O'Brien* (1956), 8 Ill. 2d 203, 133 N.E.2d 274.) With regard to the first ground asserted by the contestant, we note that undue influence arises when the dispository provisions of a will are more the will of the influencer than the testator. *In re Estate of Stuhlfauth* (1980), 88 Ill. App. 3d 974, 410 N.E.2d 1063.

> "The circumstances which raise a presumption that a will was executed as a result of undue influence on the testator, and if proved and unrebutted, are sufficient to void the will follow:
>
> (1) a fiduciary relationship between testator and a person who receives a substantial benefit under the will (compared to other persons who have an equal claim to the testator's bounty);
>
> (2) a testator in a dependent situation in which the substantial beneficiaries are in dominant roles;
>
> (3) a testator who reposed trust and confidence in such beneficiaries; and
>
> (4) a will prepared or procured and executed in circumstances wherein such beneficiaries were instrumental or participated. Once proved, a *prima facie* case of undue influence has been established." (*Beyers v. Billingsley* (1977), 54 Ill. App. 3d 427, 436-37, 369 N.E.2d 1320, 1327.)

Once the presumption of undue influence is raised, the burden shifts to those who would defend the will to rebut the presumption of undue influence. *In re Estate of Stuhlfauth.*

▪ We believe the evidence before the circuit court jury was sufficient to meet the four-part test set forth in *Beyers v. Billingsley*, and therefore to raise a presumption of undue influence in the execution of the disputed will. Clearly, John Mooney stood in a fiduciary relationship with his brother Thomas. He was a dominant party who Thomas trusted to handle his financial affairs as well as many of the affairs of his day-to-day existence. The dispositive provisions of the

disputed will substantially benefitted John Mooney as compared to his sister Mary and his sister Agnes, both of whom shared the same relation of kinship to the decedent. Thomas Mooney depended on his brother John, who he trusted and confided in. Finally, it is clear that the will which was signed on September 11 was procured and executed under circumstances wherein John Mooney was an instrumental participant.

■■ ■ With the presumption raised, the burden of producing evidence to rebut the presumption shifted to the executor and those who sought to defend the will. It does not appear that the burden was met in the instant case. There is no evidence that Thomas Mooney received any independent advice in the preparation of the disputed will. There is no evidence that Thomas Mooney understood the contents of the will that he signed. Indeed, there is no evidence that the witnesses, Fran and Michael Hudak, witnessed the will at the request of Thomas Mooney. Instead, both men concede that it was John Mooney who asked them to come to the hospital and it was John Mooney who there asked them to sign the will executed by his brother. Mere proof of the due and legal execution of a will is not sufficient to rebut the presumption of undue influence once raised. (*In re Putnam's Will* (1931), 257 N.Y. 140, 177 N.E. 399.) Similarly, proof of the existence of an affectionate relationship between the testator and a preferred beneficiary is not sufficient to rebut a presumption of undue influence. (*Harmon v. Ketchum* (Tex. Civ. App. 1927), 299 S.W. 682.)

> "Where the evidence on the issues of mental competency and undue influence in a will contest is conflicting, that on either side being sufficient, alone, to sustain a verdict for that side, the jury and the trial judge are in a better position to determine the issues than is a reviewing court, and a judgment upholding the will will not be reversed on the evidence unless the verdict is contrary to the manifest weight thereof." (*Sterling v. Dubin* (1955), 6 Ill. 2d 64, 74, 126 N.E.2d 718.)

The rule is no different where the judgment in the court below failed to uphold the will, and where, as here, the evidence in rebuttal of the presumption is at best meager, we cannot say that the verdict of the Will County jury is contrary to the manifest weight of the evidence. Since we find sufficient evidence to sustain the verdict of the jury on the ground of undue influence, it is unnecessary to further consider the testamentary capacity of Thomas Mooney on September 11, 1980.

■■ The appellants suggest that even if the verdict below was not contrary to the weight of the evidence, errors in the conduct of the trial require a reversal and rehearing. Specifically, it is urged that the

circuit court's refusal to give a tendered instruction resulted in prejudicial error. While this alleged error was brought to the attention of the trial court by way of a timely post-trial motion, the motion did not more than summarily assert the correctness of the tendered charge. The Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 68.1(2)) and the Supreme Court Rules (87 Ill. 2d R. 366(b)(2)(iii)) establish a standard of specificity which must be met in motions for post-trial relief. In interpreting the Civil Practice Act and Supreme Court Rules, it has been determined that summarily listing jury instructions in the post-trial motion does not set forth with specificity sufficient to preserve the matter for review any alleged error in those instructions. (*Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 415 N.E.2d 337; *Pyse v. Byrd* (1983), 115 Ill. App. 3d 1003, 450 N.E.2d 1374.) Accordingly, we determine that any alleged error in the failure to give the tendered instruction has been waived for appellate review.

■ It is also urged that the repeated attempts by the contestant to introduce irrelevant matters into the hearing below, as evidenced by more than 200 sustained objections interposed by the executor's counsel, unduly prejudiced the case of the executor in the eyes of the jury by creating the impression that the executor was attempting to conceal evidence. Much of the matter sought to be introduced, which provoked the objections sustained by the circuit court, concerned occurrences remote in time from the execution of the will. It was the executor's position that only evidence of incapacity or undue influence on or about the time of the execution of the will was relevant to this proceeding. That position is essentially correct. The rule as to proof of mental capacity or undue influence requires that such proof, to be competent, relate to a time at or near the time of the making of the will. (*Shevlin v. Jackson* (1955), 5 Ill. 2d 43, 124 N.E.2d 895; *Knudson v. Knudson* (1943), 382 Ill. 492, 46 N.E.2d 1011.) However, evidence of mental condition at other times, if it fairly tends to show the condition of the testator at the time the will was actually executed, may also be competent. (*Shevlin v. Jackson; Knudson v. Knudson.*) A review of the transcript of proceedings, and of the many objections that were sustained by the trial court, indicates that the contestant attempted through her witnesses to characterize the relationship between her brothers, John and Thomas, as one of long standing and uninterrupted dominance and dependency. Her theory of the case was that this relationship existed not only on September 11, 1980, but continuously for many years prior to that. We agree that remote and isolated occurrences which evidence lack of capacity or undue influence at times not reasonably contemporaneous with the execution of the

will are generally irrelevant in a contest of that will. But, where the evidence of past occurrences is sufficiently connected to establish a pattern, continuous over time, it becomes relevant to the execution of the will. A condition is presumed to continue if it be of a continuous nature, or if it can be shown to be of a continuous nature. (*Butler v. O'Brien* (1956), 8 Ill. 2d 203, 133 N.E.2d 274.) Where, as here, the contestant urged that the relationship of dominance and dependence between John Mooney and Thomas Mooney continued over an extended period of time up to and including the execution of the will, and where evidence of the previous existence of that relationship forms an unbroken chronology up to and including the time of the execution of the will, then those matters may indeed be relevant to the issue before the court. Thus, we conclude it was the contestant's case, and not the executor's case, that was prejudiced when the executor's efforts to exclude this evidence were repeatedly sustained.

Finally, the executor posits that his case was prejudiced by the violation of a motion *in limine* during the course of the trial and by improper closing argument. While it does appear that the circuit court's order pursuant to the motion *in limine*, limiting the introduction of evidence, was violated on one occasion, we believe this breach was in the nature of harmless error as it would not have affected the presumption of undue influence raised by the evidence. Similarly, the improper argument by contestant's attorney was disregarded by the jury upon the admonishment by the circuit judge, and in no way could have affected the jury's deliberation on the issue of undue influence.

After carefully reviewing the transcript of proceedings, the briefs of counsel, and the authorities submitted therein, we conclude that the verdict of the Will County jury should be and is hereby affirmed.

Affirmed.

STOUDER, P.J., and ALLOY, J., concur.