*In re* ESTATE OF HELENA JESSMAN, Deceased (Olney Trust Bank, Ex'r of the Estate of Katherine Jessman, a/k/a Katherine Gordon, Deceased, Petitioner-Appellant, v. Connie J. Hoelscher, Ex'r of the Estate of Helena Jessman, Deceased, *et al.*, Respondents-Appellees).

Fifth District   No. 5—89—0012

Opinion filed April 26, 1990.

Croegaert, Clark & Hough, Ltd., of Olney, for appellant.

William W. Austin and Kim L. Spaits, both of Parke, Siemer, Austin, Resch & Resch, of Effingham, for appellee Connie J. Hoelscher.

JUSTICE HARRISON delivered the opinion of the court:

Helena Jessman died on July 27, 1985, leaving a will dated March 27, 1981, which bequeathed all her property to respondent Connie J. Hoelscher, and named Sandra Coleman, Connie's daughter, as contingent legatee and devisee. The will specifically disinherited decedent's only heir, her sister, Katherine Jessman. Katherine, by the Olney Trust Bank, guardian of her estate and, following her death, executor of her estate, filed a petition to contest the will in the circuit court of Effingham County pursuant to section 8—1 of the Probate Act of 1975 (Ill. Rev. Stat. 1987, ch. 110½, par. 8—1).

Petitioner's "Second Amended Petition to Contest Will," the subject of this appeal, contains three counts. Count I alleges that the 1981 will of Helena Jessman, admitted to probate by order dated August 8, 1985, was procured through the undue influence of respondent Connie J. Hoelscher. Count II alleges that at the time of executing said will Helena lacked the testamentary capacity to execute a valid will. Count III alleges that numerous *inter vivos* transfers of property, money and real estate were procured through the undue influence of respondent.

Respondent filed a motion for summary judgment on the petition, and following hearings on August 17 and December 6, 1988, the court granted her motion as to all three counts. Petitioner now appeals the judgment. As to counts I and III, we reverse and remand. However,

as petitioner has failed to allege any error arising from the circuit court's grant of summary judgment as to count II, that portion of the circuit court's judgment is affirmed.

At the time of her death, Helena Jessman was 90 years old, and Connie Hoelscher was approximately 62. Helena was a school teacher living in Michigan when she met Connie in 1949. Helena and her sister Katherine owned a farmhouse in Kinmundy, Illinois, where they spent their summer vacations together. Connie met Helena while Connie was visiting her mother-in-law, who lived next door to the Jessman sisters. Connie became friends with the sisters and from 1949 until approximately 1959, Connie visited them two or three times a week during Helena's summer vacations and once visited Helena in Michigan.

Helena's trips to Kinmundy became less frequent after 1960, and following her retirement in 1966, they stopped altogether. From 1966 to 1980, Connie and Helena's contact with each other was limited to annual phone calls during the holidays. Helena asked Connie to visit her during this 14-year period, but no visits were made.

In 1980, Helena returned to Kinmundy and purchased a home across town from where Katherine was living. At this point, the sisters owned the majority of their assets jointly with full rights of survivorship. In October 1980, Helena executed a will naming Katherine as her sole heir, legatee and devisee.

In December 1980, Katherine called Connie to tell her that Helena had returned to Kinmundy. Thereafter, Katherine periodically called Connie to ask that she visit Helena or take Helena to her doctors' appointments. In late February and early March 1981, Katherine called Connie several times and asked that Connie take Helena home with her, which Connie did on at least two occasions for overnight or short stays. Helena was unhappy living alone, and Katherine was unwilling or unable to move Helena in with her. After Katherine suggested placing Helena in a nursing home, the sisters had "a falling out" and Connie permanently moved Helena into her home. Soon afterward, Helena requested that Connie make an appointment with an attorney to draft a new will.

Connie contacted attorney Richard Brummer, who had handled a divorce for Connie in 1972. On March 12, 1981, Connie drove Helena to Brummer's office and the three met for over an hour. During this meeting, a broad power of attorney was prepared and executed, conferring upon Connie the right to sign checks, execute deeds and transact other business for Helena's benefit. Brummer also obtained the information necessary to draft a will for Helena. On March 13,

1981, a draft of the new will was mailed to Helena at Connie's home address. Prior to the execution of the will on March 27, 1981, a second draft of the will was prepared, adding "Article Two," which reads: "Although I have a sister, Catherine Jessman of Kinmundy, Illinois, it is not my desire to leave any of my estate to her." Katherine's name was incorrectly spelled with a "C" in the new will, but was correctly spelled in Helena's 1980 will.

On March 27, 1981, Connie again drove Helena to Brummer's office. Brummer reviewed with Helena the will and a separate document designating Connie as Helena's guardian, and discussed their legal impact with her. Brummer then called in two employees of the firm to witness the execution of the will. It is unclear from the record whether Connie was present when the will was signed. Although Connie stated that she was present, Brummer and the two witnesses did not recall her being present.

Between March 1981 and March 1982, the joint ownership of assets between Helena and Katherine was severed, and Connie became a joint tenant with Helena in the ownership of Helena's assets. Helena's lock box and checking accounts were placed in both Connie's and Helena's names. In May or June 1981, Helena purchased a home in joint tenancy with Connie, although Connie contributed none of the $70,000 cost. After Connie, her husband and Helena moved into this new home, Connie and her husband sold their home and retained all of the profits. Helena made certain other gifts to Connie between March 27, 1981, and the time of her death, including an outright transfer of 500 shares of AT&T stock.

Following Helena's move to Connie's home in March 1981, Connie became Helena's sole source of transportation. Additionally, Connie handled certain financial affairs for Helena, paid her bills and deposited checks for her, purchased Helena's clothing and personal items, and otherwise attended to her care. Connie stated, however, that she did not encourage Helena to prepare a new will, nor did she request any gifts from Helena. Connie stated that she was merely carrying out Helena's instructions in handling her business affairs.

According to the witnesses' affidavits, at the time Helena executed her will, she "appeared alert and of sound mind and memory" and "did not appear nervous or under any type of *** compulsion from any source." Brummer, who represented Helena in several transactions subsequent to the execution of the will, noted a general improvement in Helena's appearance following their first meetings in March 1981. Brummer stated that although Helena had some memory problems, she was a "rather strong-willed individual" who had indi-

cated a dislike for, and a dissatisfaction with, her sister. Indeed, Helena resented Brummer's suggestion that she meet with Katherine. Although Katherine made repeated attempts to reconcile with Helena, visiting Connie's home on several occasions, Helena refused to speak with her sister.

Petitioner asserts that the trial court erred in granting summary judgment for respondent on counts I and III, where genuine issues of material fact exist as to whether Helena's 1981 will and her subsequent *inter vivos* transfers of property were procured through the undue influence of respondent. We agree.

The purpose of summary judgment is not to try an issue of fact, but to determine whether a triable issue of fact exists. (*Sloan v. Jasper County Community Unit School District No. 1* (1988), 167 Ill. App. 3d 867, 870, 522 N.E.2d 334, 336.) Summary judgment should be granted with caution so that the right to trial on conflicting facts and inferences is not usurped. "Only when the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law should summary judgment be awarded." 167 Ill. App. 3d at 870, 522 N.E.2d at 336.

Even if the facts are undisputed, if reasonable persons could draw different inferences from the facts, a triable issue exists. Only when undisputed facts admit of but a single inference does the issue become one of law. (*Practical Offset, Inc. v. Davis* (1980), 83 Ill. App. 3d 566, 570, 404 N.E.2d 516, 520.) Further, summary judgment is particularly inappropriate where the inferences sought to be drawn by the parties deal with questions of motive, intent or subjective feelings and reactions. (*Montgomery Ward & Co. v. Wetzel* (1981), 98 Ill. App. 3d 243, 247, 423 N.E.2d 1170, 1174; *Schuster v. East St. Louis Jockey Club, Inc.* (1976), 37 Ill. App. 3d 483, 487, 345 N.E.2d 168, 172.) Here, both parties sought to draw inferences regarding the intent and feelings of Helena from the facts surrounding the making of Helena's 1981 will and subsequent *inter vivos* transfers of property.

With regard to petitioner's count I, we note that undue influence arises when the dispository provisions of a will are more the will of the influencer than the testator. (*In re Estate of Mooney* (1983), 117 Ill. App. 3d 993, 997, 453 N.E.2d 1158, 1161.) The circumstances which raise a presumption that a will was executed as a result of undue influence on the testator are as follows: (1) a fiduciary relationship between testator and a person who receives a substantial benefit under the will (compared to other persons who have an equal claim to the testator's bounty); (2) a testator in a dependent situation

in which the substantial beneficiaries are in dominant roles; (3) a testator who reposed trust and confidence in such beneficiaries; and (4) a will prepared or procured and executed in circumstances wherein such beneficiaries were instrumental or participated. (117 Ill. App. 3d at 997, 453 N.E.2d at 1161.) Once these factors are proven, the petitioner has established a *prima facie* case of undue influence and the burden shifts to those who would defend the will to rebut the presumption. 117 Ill. App. 3d at 997, 453 N.E.2d at 1161.

■■ We believe the evidence before the circuit court was sufficient to raise the presumption of undue influence in the execution of Helena's 1981 will. It would appear from the record that Connie stood in a fiduciary relationship with Helena. Indeed, respondent admitted in oral argument that a fiduciary relationship existed. The dispositive provisions of the 1981 will exclusively benefit Connie and disinherit Katherine, who was Helena's only living relative. Helena was dependent upon Connie, a dominant party who took Helena into her home at a time of need. Helena entrusted Connie to handle her financial affairs and most of the affairs of her day-to-day existence. Finally, the 1981 will was procured and executed under circumstances wherein Connie participated. Therefore, petitioner had established a *prima facie* case of undue influence in the procurement of the will that should have withstood a motion for summary judgment.

■■ A similar presumption of undue influence applies to the *inter vivos* transfers of property between Helena and Connie which are the subject of petitioner's count III. As a matter of law, a power of attorney gives rise to a general fiduciary relationship between the grantor of the power and the grantee. (*Lemp v. Hauptmann* (1988), 170 Ill. App. 3d 753, 757, 525 N.E.2d 203, 205.) Once the petitioner has shown a fiduciary relationship exists, the presumption is that a transaction between the parties which profits the fiduciary is fraudulent. The burden then shifts to the fiduciary to prove by clear and convincing evidence that the transaction was not the result of undue influence. *In re Estate of Rothenberg* (1988), 176 Ill. App. 3d 176, 178, 530 N.E.2d 1148, 1150; *Lemp*, 170 Ill. App. 3d at 757, 525 N.E.2d at 206.

■■ The *inter vivos* transfers of property between Helena and Connie all occurred between the grant of the power of attorney on March 12, 1981, and the termination of that power upon Helena's death. Therefore, the presumption is that the transactions are fraudulent because of the fiduciary relationship between Helena and Connie. Given this presumption, she similarly has not shown that no genuine issue of material fact exists warranting a grant of summary judgment regarding these transfers.

In determining the genuineness of a material fact issue, the court should ignore personal conclusions as to motive or credibility and should liberally construe the evidence in favor of the party opposing the motion for summary judgment. (*Schuster*, 37 Ill. App. 3d at 487, 345 N.E.2d at 172.) Here, in ordering summary judgment for respondent on counts I and III, the circuit court failed to follow this standard, making findings of fact based upon inferences as to motive and construing the evidence in favor of the respondent, despite the presence of legal presumptions to the contrary. We therefore reverse the circuit court's grant of respondent's motion for summary judgment on counts I and III and remand the cause for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded.

WELCH and GOLDENHERSH, JJ., concur.