*In re* ESTATE OF H. EARL HOOVER (Robert C. Hoover *et al.*, Plaintiffs-Appellants, v. Miriam U. Hoover *et al.*, Defendants-Appellees).

First District (5th Division) Nos. 1—88—2841, 1—89—2043, 1—89—2091 cons.

Opinion filed March 6, 1992.

---

Robert A. Holstein and David L. Poindexter, both of Holstein, Mack & Dupree, Jerold S. Solovy, Laura A. Kaster, Norman M. Hirsch, and Robert S. Markin, all of Jenner & Block, and Hinshaw, Culbertson, Moelmann, Hoban & Fuller, all of Chicago, for appellants.

Michael T. Hannafan and James J. Byrnes, both of Michael T. Hannafan & Associates, Ltd., Seymour Simon, Stanley J. Adelman, Michael R. Goldman, Carolyn S. Reed, and Fredric A. Cohen, all of Rudnick & Wolfe, James J. Carroll, Lee J. Schwartz, and Mark B. Blocker, all of Sidley & Austin, and Michael W. Coffield and John D. English, both of Coffield, Ungaretti, Harris & Slavin, all of Chicago, for appellees.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Plaintiffs appeal from an order of the circuit court of Cook County granting summary judgment as to a will contest action brought by plaintiffs against the executors of the estate of H. Earl Hoover alleging that various members of plaintiffs' family unduly influenced the testator to disinherit his son Robert C. Hoover and five of Robert's children. Before the court is also an appeal from an order of the circuit court of Cook County imposing sanctions under section 2—611 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch.

110, par. 2—611 (now preempted by Supreme Court Rule 137 (134 Ill. 2d R. 137))), totalling $935,400 against Robert C. Hoover, attorney Robert A. Holstein, and the law firm of Holstein, Mack & Dupree, for the litigation involving the estate of H. Earl Hoover.

The issues raised by plaintiffs on appeal are as follows: (1) whether the trial court erred in granting summary judgment in favor of defendants on the undue influence count; (2) whether the trial court erred in granting summary judgment in light of its refusal to strike expert testimony; (3) whether the trial court erred in placing limitations upon plaintiff's discovery; (4) whether the trial court erred in not permitting plaintiffs to amend their claim after summary judgment to state a cause of action for fraud in the inducement; (5) whether the trial court erred in concluding that section 2—611 applied to Robert C. Hoover, Robert A. Holstein and the law firm of Holstein, Mack & Dupree; (6) whether the trial court awarded the proper amount of sanctions; and (7) whether section 2—611 is an unconstitutional legislative intrusion into the Illinois Supreme Court's exclusive regulatory and disciplinary power over attorneys.

This case involves the estate of H. Earl Hoover, who died testate on November 13, 1985. His will and eight codicils were admitted to probate on November 18, 1985.

H. Earl Hoover executed a last will and testament on June 27, 1974. H. Earl Hoover's son Robert and Robert's children were beneficiaries under the will and first through third codicils. With the fourth codicil, however, H. Earl Hoover began the disinheritance of Robert and five of his seven children. The disinheritance of Robert and his five children was completed in the fifth codicil and upheld through codicils six, seven and eight. Following H. Earl Hoover's death, Robert along with his children Catherine, Holly, Robert II, John and Whitney instituted this will contest in the circuit court of Cook County.

Plaintiffs based their will contest on the theories of testamentary incapacity and undue influence. The basis for the undue influence claim was that H. Earl Hoover's free will had been overcome by a series of lies and misrepresentations about Robert coming from the testator's wife, Miriam, Robert's brother Jack, Robert's daughters Courtney and Elizabeth, and primarily from Robert's ex-wife, Nancy. Plaintiffs allege that Nancy Hoover misrepresented Robert's ability to provide adequately for Elizabeth and Courtney's college and high school educations, Robert's character in handling the dissolution of his marriage to Nancy and his relationship with his children thereafter.

Defendants filed motions for summary judgment on both the testamentary capacity and the undue influence counts of plaintiffs' complaint. Plaintiffs did not contest the motion for summary judgment on the testamentary capacity count, and following a hearing on August 26, 1988, the court granted the motions for summary judgment on both counts. On September 13, 1988, plaintiffs moved to vacate the court's order of August 26, 1988, and grant leave *instanter* to file a second amended complaint sounding in fraud in the inducement. The court denied plaintiffs' motion.

Defendants then filed motions for sanctions pursuant to section 2—611 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611 (now preempted by Supreme Court Rule 137 (134 Ill. 2d R. 137))) against plaintiffs and their attorneys. The circuit court ruled that section 2—611 sanctions were appropriate, and on July 7, 1989, the circuit court entered a written order assessing $129,000 in sanctions individually against Robert C. Hoover, and $805,500 in sanctions jointly and severally against Robert C. Hoover, Robert A. Holstein and Holstein, Mack & Dupree. The court declined to impose sanctions upon any individual attorneys of Holstein, Mack & Dupree, other than Robert A. Holstein, holding that such lawyers acted on the authority of Robert A. Holstein and on behalf of the firm.

Plaintiffs appeal the trial court's order granting summary judgment. Robert C. Hoover, Robert A. Holstein and the law firm of Holstein, Mack & Dupree also seek a reversal of the court's order awarding sanctions, or in the alternative, that the case be remanded for specific findings as to the individual liability of Holstein, Mack & Dupree attorneys. In addition, the defendants have filed a cross-appeal challenging that part of the court's order which refused to impose sanctions upon attorneys who signed pleadings other than Robert A. Holstein.

A motion for summary judgment is to be granted where the pleadings, depositions, admissions and affidavits on file show that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law. (*Kniffin v. Kniffin* (1983), 119 Ill. App. 3d 106, 456 N.E.2d 659.) Although the use of summary judgment is to be encouraged to aid in the expeditious disposition of a lawsuit, summary judgment is a drastic means of disposing of litigation and, therefore, should only be allowed when the right of the moving party is free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) To determine the presence of a genuine issue of material fact, courts must construe the pleadings, depositions, admissions, exhibits and affidavits on file strictly against the movant

and liberally in favor of the opponent. (*Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.) The granting or denying a motion for summary judgment is not discretionary (*Zale Construction Co. v. Hoffman* (1986), 145 Ill. App. 3d 235, 494 N.E.2d 830), and the *de novo* standard of review is applied. (*Demos v. National Bank of Greece* (1991), 209 Ill. App. 3d 655, 567 N.E.2d 1083.) Applying these principles, we believe that the trial court should not have granted summary judgment in favor of the defendants.

■ The undue influence which invalidates a will must be directly connected with the procurement and execution of the will and must be operative at the time it is made. (*Peters v. Catt* (1958), 15 Ill. 2d 255, 154 N.E.2d 280.) In addition, the undue influence must cause the testator to make a disposition of property that is not the testator's free and voluntary act, but which is the product or mind of another person. (*In re Estate of Ariola* (1979), 69 Ill. App. 3d 158, 386 N.E.2d 862.) The influence must also be specifically directed toward procuring the will in favor of a particular person or persons. *Sterling v. Kramer* (1957), 15 Ill. App. 2d 230, 145 N.E.2d 757.

Plaintiffs argue that Nancy was primarily responsible for exerting undue influence on H. Earl Hoover. To support this claim, plaintiffs present evidence of correspondence between Nancy and H. Earl Hoover in which Nancy commented that Robert had abandoned his daughters, was not providing funds for Courtney's and Elizabeth's education and left Nancy and the girls destitute. There is also evidence that the testator's wife, Miriam, sympathized with Nancy and helped to persuade H. Earl Hoover to take Nancy's side in her dispute with Robert. Plaintiffs contend that Nancy misrepresented her situation to the testator, that Robert was, in fact, providing sufficient financial support to Nancy, Courtney and Elizabeth and that this bombardment of lies by Nancy overcame the testator's will.

■ There is no dispute that H. Earl Hoover was greatly upset with Robert's handling of his divorce and his relations with his daughters Elizabeth and Courtney, and that H. Earl Hoover removed Robert from his will after hearing that Robert made inadequate provisions for his daughters' future education. From this evidence, and given H. Earl Hoover's age and deteriorating health, an inference could be drawn that the pressure from family members overcame H. Earl Hoover's will, and influenced him to procure a will disinheriting Robert and his five children, and providing bequests for Nancy and her two children. In granting summary judgment, the judge must not attempt to weigh the evidence. Even where a given interpretation is

more cogent, summary judgment must be denied as long as a contrary interpretation is possible.

In addition, a question of fact exists regarding the interpretation of the following provision of H. Earl Hoover's diary, a provision clearly material to the issue of whether H. Earl Hoover was unduly influenced. On June 23, 1981, H. Earl Hoover's diary reports that:

> "At 1:20 Bob Foote came to 4:10 [*sic*] & with [Miriam] revised our wills. He called Tom Swaney and told of the changes. Gave him some snaps for Barbara."

This diary entry was made just prior to the execution of the fourth codicil, disinheriting Robert and his five children. Plaintiffs interpret this to mean that Miriam alone met with Robert Foote for the purpose of revising not only her will, but the codicil to H. Earl Hoover's will. Defendants, in contrast, contend that the plain meaning of the diary entry is that Foote met with both Miriam and H. Earl Hoover to discuss changes to their respective wills. This therefore presents another issue of material fact.

Also in dispute is whether the contested codicils procured a benefit for the persons charged with exerting undue influence. It is undisputed that after Nancy approached the testator for funds for the girls' education, H. Earl Hoover cut Robert out of the will, added educational provisions for Courtney and Elizabeth and left a direct bequest to Nancy. While defendants contend that they were actually adversely affected by Robert's disinheritance, clearly an issue of disputed fact remains.

Not only do the foregoing contentions reveal the existence of genuine issues of material fact, but the expert affidavit of psychiatrist Dr. Finkel also leads to a conclusion that material issues of fact exist. In his affidavit, Dr. Finkel stated that he reviewed the diaries and medical records of H. Earl Hoover, the depositions of the defendants, the family correspondence as well as articles and cases on undue influence and concluded that H. Earl Hoover was unduly influenced by the actions of the defendants. Dr. Finkel stated that his opinion, "reached with the utmost medical and scientific certainty possible," was that:

> "H. Earl Hoover, when he disinherited Bob, was at an age where he demonstrated difficulty in assuming new tasks and integrating new information, despite his relatively robust condition. The actions of Nancy, Elizabeth, Courtney, Miriam and Jack Hoover, in thrusting upon H. Earl Hoover a volative [*sic*] and hostile new situation regarding his beloved son Bob, (which as I stated in my affidavit, the evidence shows was a largely false account of that situation) worked effectively to overcome

H. Earl Hoover's freedom of mind and thus substituted their will for his own."

Defendants moved to strike Dr. Finkel's affidavit, arguing that Dr. Finkel was not competent to offer the opinions contained in his affidavit, that his opinions were conclusory, and were made without adequate scientific method. In support of their motion to strike, defendants appended the affidavit of their own expert, Dr. Howard Kurland, a practicing psychiatrist. Dr. Kurland, in his counteraffidavit, stated that without the ability to conduct a personal evaluation of H. Earl Hoover, conclusions that he was not capable of comprehending new information, not able to evaluate his informants, and not able to formulate reasonable opinions would lack essential neuropsychiatric validity. Plaintiffs then provided the affidavit of Dr. Ronald Schlensky, who stated that he reviewed Dr. Finkel's affidavit, the motion to strike and Dr. Kurland's counteraffidavit, and concluded that Dr. Finkel had "extraordinarily excellent material to provide a basis for formulating an expert opinion." Dr. Schlensky disagreed with Dr. Kurland's opinion that such an approach as taken by Dr. Finkel in this case is "neuropsychiatrically invalid," stating that it would be nearly impossible to have a will contest when psychological and emotional factors are pertinent without retrospective analysis.

In denying the motion to strike Dr. Finkel's affidavit, the trial court stated:

"So the motions to strike the affidavits are denied. I read them all. I read everything. I don't want any ifs, ands or buts about it. Everything that is relevant, believe me, I have considered."

Although defendants challenge the admissibility of Dr. Finkel's affidavit, they have not cross-appealed on this issue. Because defendants failed to appeal the trial court's order denying their motion to strike Finkel's affidavit, they have waived their opportunity to challenge the admissibility of Dr. Finkel's affidavit on appeal.

We find that the trial court's acceptance of Dr. Finkel's affidavit into evidence prevents summary judgment from being entered in favor of the defendants. The function of affidavits is to show whether issues raised are genuine and whether or not each party has competent evidence to offer which tends to support his side of the issue. (*Reynolds v. Heerey* (1980), 88 Ill. App. 3d 101, 410 N.E.2d 334.) If a material and genuine issue of fact is raised and a jury has been demanded, a trial court may not weigh the evidence set forth in the affidavits and counteraffidavits, thereby denying a trial by jury. (*Denton Enterprises, Inc. v. Illinois State Toll Highway Authority* (1979), 77 Ill. App. 3d 495, 396 N.E.2d 34.) Because the plaintiffs' claim of un-

due influence is supported by Dr. Finkel's affidavit, which has been deemed competent by the trial court, we find that a disputed issue of material fact as to whether H. Earl Hoover was unduly influenced remains, thereby precluding summary judgment.

Accordingly, we find that there is sufficient evidence to go to the jury on the question of whether defendants unduly influenced H. Earl Hoover to disinherit Robert and his five children and reverse the trial court's order granting summary judgment in favor of the defendants.

Plaintiffs next contend that the trial court should have permitted the completion of the deposition of Ronald Wagner, Nancy's divorce attorney. Specifically, plaintiffs argue that the trial court erroneously ruled on the issue of attorney-client privilege.

During Wagner's deposition, plaintiffs asked him about the contents of specific conversations he had with his client, Nancy. Defendants objected to these questions on the grounds of attorney-client privilege. Plaintiffs asserted that Nancy had completely waived this privilege by her prior disclosures and filed a motion to compel. The trial court ruled that while Nancy had waived the attorney-client privilege as to the contents of specific conversations or correspondence between her and Wagner either at her deposition or in documents she produced in this case, there had been no blanket waiver of the attorney-client privilege. The court therefore ordered that Wagner be permitted to answer all questions concerning conversations he had with Nancy in which she repeated to him communications with third parties. The court also ordered that plaintiffs could inquire on all previously disclosed material. When plaintiffs persisted in their questioning about specific conversations between Wagner and Nancy not already disclosed by Nancy, plaintiffs presented a second motion to compel, and the trial court ruled that Wagner could be asked two specific questions relating to two specific conversations he had with Nancy to which the attorney-client privilege had been waived. Plaintiffs were allowed to take one further session on Wagner's deposition during which plaintiffs asked these two questions about these specific conversations. Defendants, however, again objected asserting the attorney-client privilege when plaintiffs attempted to ask Wagner about conversations other than the two specific conversations set forth in the court's order.

Plaintiffs now assert that the trial court erred in ruling that Nancy's waiver of the attorney-client privilege involving her conversations with Wagner was limited. Plaintiffs contend that Nancy completely waived the privilege by testifying about conversations with her law-

yer, disclosing communications to third parties in letters turned over to plaintiffs and voluntarily turning over her divorce files to plaintiffs.

■■ We disagree. The attorney-client privilege may be waived by the client when she voluntary discloses the privileged information. (*Newton v. Meissner* (1979), 76 Ill. App. 3d 479, 394 N.E.2d 1241.) However, the voluntary disclosure of confidential information does not effectively waive the attorney-client privilege as to all other non-disclosed communications which may have taken place. (*Newton*, 76 Ill. App. 3d at 499, 394 N.E.2d at 1255.) The trial court, therefore, correctly determined that while Nancy had partially waived the attorney-client privilege as to the communications with Wagner that she had disclosed, there was no blanket waiver as to the undisclosed communications.

Plaintiffs next maintain that the trial court erred in restricting the production of documents to the period of 1979 to 1985, and in prohibiting the production of H. Earl Hoover's diaries from 1949 to 1952. The trial court denied plaintiffs access to the documents on the basis that plaintiffs' request was overbroad, irrelevant and was not calculated to lead to the discovery of admissible evidence.

■■ In light of the fact that the contested codicils were executed between the years of 1981-1983, the trial court properly confined discovery to the time period between 1979 through 1985 and denied plaintiffs' request for access to H. Earl Hoover's diaries from the period of 1949 through 1952. These requests were indeed overbroad, irrelevant and not calculated to lead to the discovery of admissible evidence, particularly given the fact that the diaries were written more than 35 years before H. Earl Hoover's death and more than 30 years before he signed the first of the five contested codicils. Plaintiffs have not presented any reason as to why the documents sought are relevant to determine whether H. Earl Hoover was unduly influenced when signing the codicils in 1981 through 1983. Accordingly, the trial court properly ruled that plaintiffs were not entitled to these documents.

Plaintiffs next contend that they should have been permitted to amend their claim to state a cause of action for fraud in the inducement pursuant to section 2—1005(g) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(g)), and that the trial court's failure to allow such an amendment constitutes an abuse of discretion. Section 2—1005(g) provides: "Before or after the entry of summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(g).) The decision to permit amendment rests with the sound

discretion of the trial court. *Hill v. Jones* (1990), 198 Ill. App. 3d 854, 556 N.E.2d 613.

■ In order to support a fraud in the inducement theory, Nancy's statements must be shown to have caused H. Earl Hoover to sign each of the contested codicils disinheriting Robert. This is the same showing which must be made to support an undue influence theory. In light of our determination that there remain genuine issues of material fact as to plaintiffs' undue influence claim, and that plaintiffs rely on the same allegations in their undue influence count as in their fraud in the inducement theory, we reverse the trial court's order denying plaintiffs leave to amend their complaint to state a cause of action for fraud in the inducement.

■ In light of our decision to reverse the trial court's order granting summary judgment and remand for further proceedings, we also reverse the sanction award imposed against Robert C. Hoover, Robert A. Holstein and Holstein, Mack & Dupree and remand this matter for a new hearing at the conclusion of the trial on the case in chief. If the trial court again awards sanctions of a significant magnitude, the trial court must provide a specific explanation for its sanction award and an itemized account of what fees and expenses it is allowing or disallowing.

The law in Illinois is that where the expenses and fees incurred in defending the suit were incurred by reason of the unsupported pleadings, an isolated focus on each reimbursable component is not necessary. (*G.M. Sloan Mosaic & Tile Co. v. Newman/Lustig & Associates* (1990), 199 Ill. App. 3d 518, 557 N.E.2d 403.) However, when the sanction award is substantial, it should be treated in the same manner courts treat substantial sanction awards under Federal Rule 11. (See *Leoco, S.A. v. Caribe Crown, Inc.* (1991) 212 Ill. App. 3d 640, 571 N.E.2d 759.) Section 2—611 is virtually identical to Rule 11 of the Federal Rules of Civil Procedure and, therefore, Illinois courts may seek guidance in the Federal interpretation of Federal Rule 11 in applying section 2—611. Federal courts disapprove of unexplained lump sum awards in Rule 11 cases and require any court imposing a "substantial" sanctions award to state with specificity the method of computation. (*Brown v. Federation of State Medical Boards* (7th Cir. 1987), 830 F.2d 1429; *Thomas v. Capital Security Services, Inc.* (5th Cir. 1988), 836 F.2d 866 (while the district court need not make specific findings as to the imposition of Rule 11 sanctions in all cases, where such sanctions are substantial in amount, they must be quantifiable with some precision and explained to the court with appropriate specificity).) Accordingly, in order for us to exercise our power of re-

view, the trial court in awarding substantial sanctions must state the theory under which sanctions are being awarded and state with specificity the manner in which the sanctions were computed.

■ Finally, the sanctioned parties contend that section 2—611 is an unconstitutional encroachment by legislature upon the Illinois Supreme Court's exclusive regulatory and disciplinary authority over attorneys. The appellate court recently rejected this argument in *In re Marriage of Stone* (1990), 197 Ill. App. 3d 457, 554 N.E.2d 801. We find that decision persuasive and likewise uphold the constitutionality of section 2—611.

Affirmed in part; reversed in part and remanded.

MURRAY and GORDON, JJ., concur.