(No. 33786.—

JARRETT R. BUTLER *et al.*, Appellees, *vs.* RICHARD M. O'BRIEN *et al.*—(THELMA BISHOP, Appellant.)

*Opinion filed March 22, 1956.*

WILLIAM E. MORAN, of Chicago, for appellant.

HAROLD J. CLARK, and MOORE, MING & LEIGHTON, both of Chicago, for appellees.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This is an appeal by defendant Thelma Bishop from a decree of the superior court of Cook County declaring that a certain writing is not the last will and testament of Betty L. Gilliard, deceased, and setting aside the probate thereof.

Betty L. Gilliard died on June 22, 1953. The alleged writing was admitted to probate by the probate court of Cook County and letters testamentary issued to the defendant Richard M. O'Brien, designated as executor therein, on October 28, 1953. The instrument named the defendant Thelma Bishop as the sole beneficiary of the estate, con-

sisting of real and personal property, valued at approximately $25,000. On July 26, 1954, the plaintiffs, first cousins of the decedent and her sole heirs-at-law, filed complaint alleging lack of testamentary capacity on the part of the decedent, the direct exercise of undue influence by the defendants, and the existence of a fiduciary relationship between decedent and defendants. Answers were filed by defendants denying these charges. A freehold is involved, hence the appeal comes directly to this court. *Challiner* v. *Smith*, 396 Ill. 106.

It appears from the evidence that the decedent, Betty L. Gilliard, was approximately 80 years old at the time of her death. For some time prior thereto, she had lived in her residence at 4429 South Michigan Avenue in Chicago. Until 1950 she was active in the management of her own property. In 1950, 1951, and part of 1952, defendant Bishop and her husband and child resided on part of the premises owned by decedent. In the fall of 1952, decedent was in such poor health that a nephew by marriage, Edward M. Baker, came from Philadelphia to care for her. He obtained a physician for her and procured her admission to the Chicago Hospital. In December, 1952, Baker brought decedent back to her home and hired a nurse for her. That same month, Baker, on the recommendation of defendant Bishop, consulted Dr. Horrall, who soon had decedent admitted to Wesley Memorial Hospital. She was very weak and feeble and he treated her for heart condition, edema and dropsy. At that time, Baker opened a checking account to take care of decedent's expenses. He deposited funds, signed checks in advance and gave them to defendant Bishop for the purpose of drawing money to meet decedent's expenses. On April 12, 1953, the decedent was discharged from Wesley Memorial Hospital, and removed to a bed in the dining room of her home. Baker hired defendant Bishop to care for decedent and arranged to pay her $50 a week for her services. On June 4, 1953, decedent

executed the purported will. On this occasion, she tried twice to sign her name but was so enfeebled that she could not do so and ultimately signed by making a mark. When the writing in question was executed, she was surrounded by persons who were neither relatives nor old friends. Thereafter, her health improved somewhat until about June 11, 1953, when she began to fail steadily and so continued until her death on June 22.

Since the appellant contends the evidence establishes neither testamentary incapacity nor undue influence, it is necessary to detail the testimony of the witnesses on these points.

Sarah Ozella, a school teacher and life-long friend of Betty Gilliard, testified for plaintiffs that she had close contact with her for over 15 years; that she saw her four or five times a week during the last year of her life and two or three times after she came out of the hospital in April, 1953; that she saw her about twice a week in the hospital and the decedent appeared to be very sick; that on June 2, 1953, decedent was limp and did not recognize the witness; that she looked in the wrong direction and was trying to locate the part of the bed where the witness was sitting; that at that time decedent said to defendant Bishop, "Thelma, take that knife out of your bosom," and Mrs. Bishop then put her hand on the bed to satisfy decedent; and that in referring to the incident, defendant Bishop told the witness that "she [decedent] has been acting queer like that lately." Sarah Ozella further testified that when she asked Betty Gilliard to talk to her, decedent did not move and her eyes appeared to be glassy. Mrs. Ozella was of the opinion that decedent, Betty Gilliard, was not of sound mind. After June 2, Mrs. Ozella tried to see decedent often but was not permitted to do so by defendant Bishop.

Lela Foston, a close friend, testified that decedent was very sick on June 3, 1953, but was not permitted to express an opinion as to her mental condition.

A neighbor, Erma Williams, testified that she had seen the decedent on April 14, 1953, after her return from the hospital; that she was ill and groggy; that the following day the witness came to stay with the decedent while Mrs. Bishop went to the dentist, but Mrs. Bishop would not let her stay; and that on two other occasions she attempted to see the decedent but Mrs. Bishop would not permit it.

Ruby Jefferson, who had known Betty Gilliard for the last 20 years, testified that she visited decedent every other day from April 7, to June 22, 1953, and observed her condition during those days; that on June 4, 1953, Betty Gilliard was in terrible condition and looked as though she was in a stupor; that she was very, very weak and partially blind. Mrs. Jefferson further testified that she asked the decedent if she knew her, and decedent merely smiled. The witness was of the opinion that between April 7 and June 4, decedent's mind was "in a mighty bad state."

Edward M. Baker, decedent's nephew, testified that he saw his aunt about 12 times during the last six months of her life; that on April 12 she was "very, very feeble;" that on April 17, the last time he saw her, the doctor said that her death was just a matter of time; that she was unable to do anything and slept practically all the time; and that she could not transact business during these last six months. The witness was of the opinion that her mind was not clear during the last six months of her life.

Roosevelt Robertson, who had known Betty Gilliard for 30 years, testified that he visited her frequently at the hospitals, and saw her in May and June of 1953, particularly between May 30 and June 5; that in the early days of June she was weaker than when she had left the hospital and had practically no use of her arms; that she was unable to transact any business; and that he had difficulty in getting into the apartment to see decedent when Mrs. Bishop was there. The witness was of the opinion that decedent "wasn't of good mind."

Two of the attesting witnesses were called adversely by plaintiffs and testified that they lived in the same building as the decedent and that they were asked by the defendant Bishop to be witnesses to the purported will on the evening of June 4, 1953.

John E. Kelly, attorney for the defendant-executor, was called by plaintiffs and testified that the purported will was prepared in his office, but that he never saw the decedent, Betty Gilliard.

At the close of the plaintiffs' case, the defendants called the two attesting witnesses, who had previously testified and put in the formal proof of the execution of the will. They did not call the other attesting witness, Dr. Horrall, because of ill health, but read into the record the transcript of his testimony taken in the probate proceeding.

Keith Le Kanter, an employee of the First National Bank of Chicago, appeared for the defendants and testified that he called on the decedent on May 20, 1953, to explain that they could no longer honor her checks because of the illegible signature. He also brought a form of power of attorney to permit Thelma Bishop to sign checks for her. Mrs. Gilliard did not execute the power of attorney but wanted to think it over and possibly discuss it with her attorney. The witness expressed the opinion that the decedent was then of sound mind.

The defendant Bishop assigned as error the ruling of the trial court denying defendants' motions for a directed verdict and for judgment notwithstanding the verdict. These motions raise the same questions and are governed by the same rules of law. (*City of Monticello v. LeCrone,* 414 Ill. 550; *Hughes v. Bandy,* 404 Ill. 74; *Tidholm v. Tidholm,* 391 Ill. 19.) In the *Tidholm case* at page 24 we stated in reference to such motions: "The only question in such a case is whether there is any evidence in the record tending to prove the allegations of the complaint. The party resisting such motions is entitled to the benefit

of all the evidence favorable to him. *Hunt v. Vermillion County Children's Home,* 381 Ill. 29; *Ryan v. Deneen,* 375 Ill. 452; *Ginsberg v. Ginsberg,* 361 Ill. 499; *Greenelees v. Allen,* 341 Ill. 262." In view of the evidence in this case, we do not believe that the trial court erred in overruling these motions.

Defendant Bishop also contends that the trial court erred in permitting lay witnesses to testify as to the testamentary capacity of decedent. There is little dispute on the basic legal principles governing will contests in Illinois. Testamentary capacity requires only that the person making a will have sufficient mind and memory to understand the particular business in which he is engaged, to know the natural objects of his bounty, and the character and extent of his property, and to make disposition of said property according to a plan formed in his own mind. *Logsdon v. Logsdon,* 412 Ill. 19; *Long v. Brink,* 353 Ill. 549; *Forberg v. Maurer,* 336 Ill. 192.) To prove lack of testamentary capacity, we have uniformly permitted the testimony of lay witnesses. (*Mitchell v. Van Scoyk,* 1 Ill.2d 160; *Peters v. Peters,* 376 Ill. 237; *Britt v. Darnell,* 315 Ill. 385.) But a lay witness must testify to sufficient facts and circumstances to afford reasonable ground for a belief in the soundness or unsoundness of mind of the person whose mental capacity is questioned and to indicate that his opinion is not a guess, suspicion, or speculation. (*Lewis v. Deamude,* 375 Ill. 219; *Britt v. Darnell,* 315 Ill. 385.) He must be able to intelligently express an opinion. (*Mosher v. Thrush,* 402 Ill. 353.) Superficial opinions based on casual impressions or observations on chance meetings are of little value. *Forberg v. Maurer,* 336 Ill. 192.

The dispute here relates to the application of these principles to the evidence in the record. We turn first to the question of whether the trial court erred in permitting certain of the plaintiffs' witnesses to give an opinion as to the testamentary capacity of decedent. Plaintiffs' witnesses

giving opinions on testamentary capacity were Sarah Ozella, Ruby Jefferson, Edward M. Baker, and Roosevelt Robertson. All of them had known the decedent well and were close friends. They testified to numerous conversations with her and to facts and circumstances which established that they had adequate occasion for close scrutiny of decedent over a period of many years. Their testimony related the progressive deterioration of Betty Gilliard's mind and body; her inability to get around and handle her own affairs, and, in the end, her failure to even recognize them. These witnesses, except Edward M. Baker, had been with the decedent within a few days of the execution of the will, and Baker, who had a good chance to watch his aunt after taking over the handling of her affairs, had seen her last within two months of the execution of the will. From a reading of the entire record we think that it is clear that the witnesses had ample opportunity to observe the condition of the decedent and that their observations were sufficiently contemporary to be admissible. (*Peters* v. *Peters*, 376 Ill. 237; *Todd* v. *Todd*, 221 Ill. 410.) The case of *Peters* v. *Peters*, 376 Ill. 237, is especially applicable here. It was there held that the testimony of witnesses, who based their opinion of soundness of mind on conversations a few months before the execution of the will, was admissible. At page 243, we stated that: "Proof of the mental condition of the testator a reasonable time before or after the making of a will may be received where it tends to show mental condition at the time of the execution of the instrument. A mental condition shown to exist is presumed to continue, if it be of a continuous nature. *Todd* v. *Todd*, 221 Ill. 410."

Defendant Bishop further asserts that even if such testimony was admissible, it was not of sufficient weight, taken in its entirety, to permit the jury to find that the decedent lacked testamentary capacity. She points out that the witnesses did not specifically testify that decedent did

not have mental capacity to understand the business in which she was engaged, know the objects of her bounty and the extent of her property. Conceding this to be true, we know of no case or rule of law which requires that witnesses testify to these conclusions. It is for the jury to determine the testamentary capacity of the decedent from all the evidence and neither the trial court nor this court will weigh the evidence. The sole question is whether plaintiff has made out a *prima facie* case sufficient to go to a jury. (*Mitchell* v. *Van Scoyk,* 1 Ill.2d. 160.) The jury was completely and accurately instructed on the law, and from reading the record we are convinced that there was sufficient evidence to establish a *prima facie* case for consideration by the jury.

Since defendants made no motion to take the issue of undue influence from the jury, and the jury returned a general verdict that the writing was not the will of Betty Gilliard, the verdict would be sustained if there was sufficient evidence on either the charge of lack of testamentary capacity or undue influence. (*Holland* v. *People's Bank and Trust Co.* 303 Ill. 381.) However, we are of the opinion that the evidence of undue influence, in itself, was sufficient to go to the jury.

On the question of undue influence, defendant Bishop relies on the well recognized rule set forth in *Mosher* v. *Thrush,* 402 Ill. 353 at 357: "The law is settled that to avoid a will upon the ground of undue influence it must be directly connected with the execution of the will itself. It must operate when the will is made, and must be directed especially toward procuring the will in favor of particular persons, and must be of such a character as to destroy the testator's freedom of will, so as to render his will obviously the result of the mind and brain of some other person."

However, the complaint also charged and proof was made to show the existence of a fiduciary relationship between the decedent and the defendant Bishop. We have

repeatedly announced that "Where a fiduciary and dominant party, in whose behalf a will is drawn, is directly connected with the making of the will by its preparation, or by participating in its preparation and execution, proof of these facts establishes *prima facie* the charge that the will resulted from undue influence exercised by the beneficiary." (*Mitchell* v. *Van Scoyk,* 1 Ill.2d 160 at 173.) And we have often held that where a fiduciary relationship exists "the active agency of the chief beneficiary in procuring a will especially, in the absence of those having equal claim on the bounty of the testator who was enfeebled by age and disease, is a circumstance indicating the probable exercise of undue influence. In that connection we have observed that a mind wearied and debilitated by long-continued and serious illness is susceptible to undue influence and liable to be imposed upon by fraud and misrepresentation; that the feebler the mind of the testator, no matter from what cause, whether from sickness or otherwise, the less evidence will be required to invalidate the will of such person." (*Mitchell* v. *Van Scoyk,* 1 Ill.2d 160, at 172.) Also see, *Wiik* v. *Hagen,* 410 Ill. 158; *Sulzberger* v. *Sulzberger,* 372 Ill. 240; *Dial* v. *Welker,* 328 Ill. 56; *Donnan* v. *Donnan,* 256 Ill. 244.

We believe that the evidence in this record on the issue of undue influence and the existence of a fiduciary relationship between decedent and defendant Bishop is sufficient to prove a *prima facie* case on behalf of the plaintiffs. There is no question but that the decedent was weak and bed ridden and incapable of conducting her own business. Defendant Bishop lived with the decedent and cared for her for almost two months when she could do nothing for herself. During this time she handled decedent's business. Beginning about the time the will was executed, defendant Bishop, to the best of her ability, prevented friends of Mrs. Gilliard from seeing her. Defendant Bishop procured the witnesses to the will. Although about two weeks before,

decedent advised witness Le Kanter that she would consult her own attorney regarding the execution of a power of attorney, the purported will in question was drawn by an attorney who never saw decedent. The attorney who drew the will represented the executor-defendant in the probate proceeding and appeared of record and participated in the trial of the will contest on his behalf. While the attorney did not testify as to who asked him to prepare the will and who furnished the directions concerning its provisions naming defendant Bishop as sole beneficiary and defendant O'Brien as executor, this evidence was within the knowledge and control of the defendants. The failure of the defendants to produce such evidence within their control justified the jury in presuming that it would be adverse to them. *Mitchell* v. *Louisville and Nashville Railroad Co.* 375 Ill. 545; *Belding* v. *Belding,* 358 Ill. 216.

The remaining error assigned by defendant Bishop was that the trial court erred in denying her motion for new trial. We concur with the trial court in this ruling. In *City of Monticello* v. *LeCrone,* 414 Ill. 550 at page 556 we held: "The rule is well settled that a court will not set aside a verdict merely because the evidence is conflicting. Nor can a reviewing court usurp the function of a jury by substituting its judgment for that of a jury in passing on the weight and credibility of conflicting testimony. *People* v. *Bond,* 281 Ill. 490; *Franks* v. *Matson,* 221 Ill. 338." The evidence in the case at bar was conflicting and from the entire record we are of the opinion that it was sufficient to warrant the jury in finding that the writing was not the will of the decedent. The decree of the trial court is accordingly affirmed.

*Decree affirmed.*