2021 IL App (1st) 210163-U

No. 1-21-0163

Order filed November 24, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| ROBERT MORTON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CH 8013 |
| | ) | |
| GLENVIEW STATE BANK, and LESLIE MORTON-BATHIO, | ) | |
| | ) | Honorable |
| | ) | Sanjay Tailor, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Martin concurred in the judgment.

**ORDER**

¶ 1     *Held*:   On cross-motions for summary judgment, the defendant bank trustee was entitled to summary judgment against the plaintiff trust beneficiary, who had sued to remove the bank as the successor trustee and sought an accounting, reimbursement of costs and fees, and sanctions based on allegations of breach of fiduciary duty, bias regarding disbursements to beneficiaries, and unlawful designation of the bank as the successor trustee.

¶ 2     Plaintiff Robert Morton, one of two beneficiaries of a trust established by his mother, sued

his sister, defendant Leslie Morton-Bathio, who was the other trust beneficiary, and defendant

Glenview State Bank (Glenview), which was the successor trustee. Robert's operative pleadings alleged against Glenview claims for an accounting, breach of fiduciary duty based on Glenview's alleged bias regarding disbursements to Robert and Leslie, and removal of Glenview as the successor trustee based, *inter alia*, on the prior trustee's alleged lack of mental competence to designate a successor trustee. Robert and Glenview filed cross-motions for summary judgment, and the trial court granted summary judgment in favor of Glenview and against Robert.

¶ 3     On appeal, Robert argues that the trial court erred by granting Glenview's summary judgment motion against him and by denying his summary judgment motion against Glenview.

¶ 4     For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                                I. BACKGROUND

¶ 6     In October 2003, Barbara Saichek established an irrevocable trust. Her two adult children, plaintiff Robert and defendant Leslie, are the sole beneficiaries of the subject Barbara Saichek trust. Defendant Glenview is the successor trustee of the trust.

¶ 7     In the trust instrument, settlor Ms. Saichek gave her trustee maximum discretion and immunity. The trust instrument states that it is the settlor's desire that the trustee "considers both the general financial resources and requirements of the [b]eneficiary and the ability of the [b]eneficiary to deal with and manage the money or property involved"; that "it is not my intention to limit the [t]rustee's discretion in any way, including without limitation, the determination of, if and what distribution should be made"; that distributions "shall be in the sole and absolute

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

discretion of the [t]rustee"; and that "no trustee, shall be held personally liable for *** errors in judgment, [or] *** any acts or omissions that do not constitute fraud, gross negligence or willful misconduct."

¶ 8    Settlor Ms. Saichek died in June 2005, and her second spouse, Mr. Robert Saichek, who was the stepfather of beneficiaries Robert and Leslie, became the trustee. Article 4, section 1 of the trust instrument provided that if Mr. Saichek was unwilling or unable to act as a trustee, then Thomas Korman and Gary Jacobs would act as successor co-trustees and if neither of them could serve in that capacity, trusteeship would pass to Northern Trust Company.

¶ 9    Northern Trust Company and Thomas Korman executed declinations to act as trustee in August and October 2012, respectively.

¶ 10    On November 6, 2013, by document entitled "Transfer and Merger Agreement between the Barbara Saichek Family Trust and the Barbara Saichek Irrevocable Trust," Mr. Saichek consolidated those two trusts. Mr. Saichek also executed on November 6, 2013, his resignation as trustee for the Barbara Saichek irrevocable trust, effective as of December 31, 2013.

¶ 11    A designation of successor trustees document, executed and effective on November 8, 2013, indicated that Mr. Saichek designated defendant Glenview as the first successor trustee, after detailing how and why the previously named successor trustees were unavailable to serve. On appeal, plaintiff Robert challenges Mr. Saichek's mental competence to sign this document and, alternatively, the genuineness of his purported signature.

¶ 12    On December 27, 2013, Glenview's senior vice president, Sheila Polcyn, executed on behalf of Glenview an acceptance as the successor trustee of the trust. She was the assigned officer with primary responsibility over the trust.

¶ 13    In May 2015, Robert filed this lawsuit against defendants Glenview and Leslie. In his three-count amended complaint, he alleged that (1) he was entitled to a trust accounting (count I), (2) Glenview breached its fiduciary duty by its conduct during the accounting and when it used its discretion to determine whether to make disbursements from the trust (count II), and (3) Glenview was unlawfully designated as the successor trustee of the trust (count III). Specifically, Robert alleged that Glenview failed and refused to provide a complete 2014 accounting for the trust and customary regular monthly or quarterly financial statements; failed to reimburse Robert's medical expenses or provide for his basic medical needs; made disbursements to Leslie for non-basic needs and without confirming that alleged reimbursements to her for medical care or home insurance were actually paid to her medical providers or insurer; failed to review and object to excessive, unreasonable and unnecessary fees billed by outside counsel; and failed to evaluate the mental competence of former trustee Mr. Saichek to have executed the 2013 successorship document.

¶ 14    Robert sought declaratory relief to, *inter alia*, reimburse him for his medical expenses and insurance; reassess the reasonableness of the monthly $1000 disbursements to Leslie; audit outside counsel's billing statements; declare that Glenview breached its fiduciary duties by its conduct during the accounting and by failing to act in an impartial manner with respect to Robert and Leslie; remove Glenview as successor trustee; find that Mr. Saichek lacked the mental competence to lawfully execute the 2013 successorship document; deny Glenview any claim for

reimbursement for its defense of this matter and order Glenview to reimburse the trust for any costs of defense paid out of the trust's assets; and award Robert attorney fees and costs.

¶ 15    In October 2015, Glenview amended its motion to dismiss the amended complaint or alternatively for summary judgment. Glenview argued that Robert had already received an accounting; Glenview acted appropriately regarding the accounting and the distribution of the trust assets; the trust gave Glenview full discretion to determine the appropriate distributions; Robert failed to plead specific facts regarding Mr. Saichek's alleged mental condition; Gary Jacobs was incapable of serving as trustee at the time of Mr. Saichek's resignation, as established by the affidavits of Mr. Jacob's wife and physicians; and Glenview was lawfully the successor trustee and could not be liable for any past distributions from the trust that occurred prior to its appointment as successor trustee.

¶ 16    Three affidavits, dated September 2015 and attached to Glenview's motion, averred that Gary Jacobs was a victim of Alzheimer's disease and was incapable of serving as trustee. These affidavits were from (1) Paula Jacobs, Mr. Jacobs' wife; (2) Dr. Greg Denenberg, Mr. Jacob's physician; and (3) Dr. Dennis Gelyana, another physician to Mr. Jacobs.

¶ 17    Another exhibit to Glenview's motion was the September 2015 affidavit of Sheila Polcyn, Glenview's senior vice president, which she supplemented later with her July 2018 affidavit. Polcyn was the assigned officer with primary responsibility over the trust. She stated that in one of Robert's initial communications with Glenview in January 2014, he requested that Glenview send trust information to him electronically, rather than by U.S. Mail. At the time Robert sent that request, Glenview had not yet obtained custody of the assets of the trust from the prior trustee.

Also, Glenview had a policy that it would not send trust statements to any beneficiary of any trust via electronic mail. Glenview informed Robert that its standard policy was to deliver account statements by U.S. Mail because its standard procedure at that time was to provide its customers/beneficiaries with physical hard copies of account statements.

¶ 18   Polcyn averred that Robert told Glenview he did not have a permanent address and requested electronic access to his account records. Glenview made a special accommodation for Robert and in May 2014 gave him access to Glenview's electronic portal, called "Trustview." This enabled Robert to electronically access reports relating to the subject trust. However, Robert later complained to Glenview that Trustview allegedly did not provide him with the same information that was contained in the monthly account statements. Glenview made another special accommodation for Robert by sending him monthly trust statements via "Mimecast," Glenview's secure electronic mail system. Robert was then the only customer/beneficiary of Glenview that received account statements electronically.

¶ 19   Polcyn averred that in February 2014, Glenview informed Robert that it required trust beneficiaries to complete and submit certain forms disclosing their information regarding their income, assets and expenses. Glenview customarily required beneficiaries of all trusts it managed to provide certain financial information when the applicable trust instrument authorized discretionary distributions and the trust terms directed Glenview, as trustee, to consider the personal finances of the beneficiaries—as does the instant trust. Robert questioned Glenview's procedures and asked whether his sister Leslie was subject to the same requirements.

¶ 20    Polcyn averred that Glenview worked with the attorneys for the prior trustee to learn about Leslie and Robert and the history of disbursements from the trust. Glenview learned that the prior trustee had made monthly $1000 payments to Leslie and also that she received Social Security disability income. Relying on the discretionary provisions of the trust, Glenview decided to temporarily continue making the $1000 monthly payments to Leslie, to continue making payments on the mortgage loan on her residence, and to pay such other reasonable expenses as deemed appropriate by Glenview's discretionary disbursements committee, until it received the requested financial information from Leslie and Robert.

¶ 21    Polcyn averred that in May 2014, Glenview contacted Leslie and Robert and asked them to complete a personal family budget form and provide a personal budget, a list of family assets, and a copy of their last income tax return—all for Glenview to consider in the event a discretionary distribution was requested. Leslie responded to the request by appearing in person at Glenview with her personal bills and other documentation. At that time, Leslie and Polcyn completed the paperwork requested by Glenview. Thereafter, Leslie stopped by Glenview monthly to speak with bank personnel. While there, she regularly provided documentation to accompany her requests for a distribution from the trust. She also regularly discussed her general expenses and financial situation with Glenview. Robert, however, did not send Glenview any of the requested information regarding his personal finances.

¶ 22    Polcyn averred that based upon the information provided by Leslie and the attorneys for the prior trustee, Glenview decided to continue the existing monthly payment to Leslie for living expenses, to pay the taxes and expenses for the upkeep of the home that was purchased by the

previous trustee, and to pay for certain other medical and related expenses. Robert continued to refuse to provide any information regarding his personal financial situation. Based on that refusal, Glenview determined not to make any payments to Robert. Relevant emails supporting the factual statements made in Polcyn's affidavit were also attached to Glenview's motion to dismiss/motion for summary judgment.

¶ 23    In response, Robert filed a cross-motion for partial summary judgment, moved to strike the affidavits attached to Glenview's summary judgment motion, and moved for sanctions under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018).

¶ 24    On June 21, 2016, the trial court (1) dismissed under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2014)), with leave to replead, count II of the amended complaint regarding Glenview's alleged breach of fiduciary duty by its use of discretion regarding disbursements, and (2) granted summary judgment to Glenview on count III of the amended complaint regarding Glenview's lawful designation as successor trustee.

¶ 25    In July 2016, Robert filed an amended count II to the amended complaint. He also moved for sanctions under Rule 137, arguing that Glenview's motion to dismiss/summary judgment motion contained false and sanctionable statements.

¶ 26    On August 8, 2016, the court denied Robert's motion for Rule 137 sanctions. Then Glenview moved to dismiss Robert's amended count II to the amended complaint, arguing that it failed to cure the deficiencies to his claim regarding the alleged disparity of Glenview's disbursements between Robert and Leslie.

¶ 27    On December 1, 2016, the trial court granted in part and denied in part Glenview's motion to dismiss count II of the amended complaint. Specifically, the court struck paragraphs 11, 12, 13, 14, 16, 17, 18(i) and 18(ii) of Robert's amended count II with prejudice and struck paragraph 15 without prejudice. Robert's paragraph 15 alleged that Leslie paid her medical providers less than the amount billed due to discounts or write offs and used the surplus funds disbursed from the trust to pay for her husband's prescriptions and other medical care or for other purposes that were not intended by the trust.

¶ 28    After the parties engaged in mediation, Robert, pursuant to the trial court's order, filed in April 2017, a second amended complaint that contained the claims/counts permitted by the court after December 2016, and included those counts and paragraphs previously dismissed or stricken to preserve those claims for appeal. Robert's three-count second amended complaint again alleged his prior claims for an accounting (count I), breach of fiduciary duty regarding Glenview's conduct during the accounting and trust disbursements (count II), and removal of Glenview as an unlawful successor trustee (count III).

¶ 29    In 2018, Robert moved for summary judgment on all three counts of his operative pleadings, and Glenview moved for summary judgment on counts I and II of the second amended complaint (as count III of the amended complaint had already been dismissed in June 2016). The trial court then made the following rulings:

- On February 1, 2019, the court granted Glenview's motion for summary judgment on counts I and II of the second amended complaint.

- On February 8, 2019, the court clarified its February 1, 2019 order by stating that Robert's motion for summary judgment was denied in its entirety.

- On March 12, 2019, the court granted Glenview's motion for summary judgment on count II, paragraph 15, of the second amended complaint concerning the issue of plaintiff's request for attorney fees. This order also stated that "this is a final order in that all counts of the second amended complaint were disposed of by summary judgment in [Glenview's] favor."

- On April 2, 2019, the court entered *nunc pro tunc* as of March 12, 2019, an order modifying and clarifying the orders of February 1, February 8, and March 12, 2019. The order stated that (1) Glenview's motion for summary judgment was granted in favor of Glenview as to counts I and II of the three-count second amended complaint, in its entirety, (2) Robert's motion for summary judgment on the second amended complaint was denied, and (3) regarding Robert's claim that Glenview breached its duty of accounting, including but not limited to its alleged pre-suit failure to provide trust tax returns and banking accounting documents as requested by Robert, the court found as a matter of law that attorney fees incurred by either Robert or the trust were not recoverable as damages.

¶ 30    In September 2019, Robert filed an appeal, which was docketed as case No. 1-19-0768. Glenview moved for sanctions against Robert under Supreme Court Rule 137, and the trial court denied that motion. Glenview filed a cross-appeal but later waived it. On December 31, 2020, this

court dismissed Robert's appeal for lack of jurisdiction because the trial court's orders did not dispose of his claims against Leslie.

¶ 31   Robert then returned to the circuit court, allowed summary judgment to be entered in favor of Leslie, and obtained entry of an order that found no just reason for delaying enforcement or appeal "of this cause in its entirety." Robert timely filed a notice of appeal from that order.

¶ 32                                  II. ANALYSIS

¶ 33                          A. Supreme Court Rule 341(h)

¶ 34   Before addressing the merits of this appeal, we address Glenview's argument that we should disregard the statement of facts section of Robert's appellate brief because it is argumentative. Specifically, Glenview argues that Robert's statement of facts is "riddled with blatant hyperbolic arguments which contain no pretense of being impartial and fair factual statements" and cites multiple examples from Robert's brief to support this argument.

¶ 35   An appellant's statement of facts must contain such facts as are necessary to an understanding of the case, stated accurately and fairly, without argument or comment, and with appropriate reference to the pages of the record on appeal. Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020); *Estate of Black v. Black*, 2019 IL App (1st) 181452, ¶ 11; see also *Ammar v. Schiller, DuCanto and Fleck, LLP*, 2017 IL App (1st) 162931, ¶¶ 11-12 ("The facts must be stated accurately and fairly and devoid of argument or comments."); *Beitner v. Marzahl*, 354 Ill. App. 3d 142, 145-46 (2004) ("argumentative language is inappropriate for a statement of facts and against the mandate of the rule"). Furthermore, a *pro se* litigant, like a licensed attorney, must meet all

requirements of Rule 341(h) in his brief to the reviewing court. *In re Marriage of Sanchez*, 2018 IL App (1st) 171075, ¶ 39.

¶ 36     Failure to comply with Rule 341(h) can create a forfeiture and be grounds for disregarding the party's arguments on appeal, striking the non-compliant brief, and dismissing the appeal. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶¶ 7-12. "This Court is *** within its rights to dismiss the appeal for failure to provide a complete statement of facts" (*Id.* ¶ 9), but can also simply disregard the non-compliant party's statement of facts (*Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 10, n. 4).

¶ 37     Based on our review, we conclude that Robert's statement of facts is argumentative and thus does not comply with Rule 341(h). Therefore, we will disregard his statement of facts.

¶ 38                                    B. Summary Judgment

¶ 39     Summary judgment is proper when the pleadings, depositions, admissions, and affidavits, construed strictly against the movant and liberally in favor of the nonmovant, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of material fact exists. *Illinois State Bar Association Mutual Insurance Co. v. Law Office of Tuzzolino & Terpinas*, 2015 IL 117096, ¶ 14. Summary judgment is a drastic measure and should be granted only when the movant's right to judgment is clear and free from doubt. *Adams*, 211 Ill. 2d at 42-43. Where a reasonable person could draw divergent inferences from the undisputed facts, summary judgment should be denied. *Id.*

¶ 40    A party moving for summary judgment, may prevail by either (1) affirmatively disproving the nonmovant's case by introducing evidence that, if uncontroverted, would entitle the movant to judgment as a matter of law; or (2) establishing that the nonmovant lacks sufficient evidence to prove an essential element of the non-movant's cause of action. *Carolan v. City of Chicago*, 2018 IL App (1st) 170205, ¶ 11. Once the movant satisfies the initial burden of production, the burden then shifts to the nonmovant to present a competent factual basis that would arguably entitle the nonmovant to a judgment under the applicable law. *Argueta v. Krivickas*, 2011 IL App (1st) 102166, ¶ 6. The nonmovant cannot rest on his pleading if the movant has supplied uncontradicted facts that would warrant judgment for the movant. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257 (2004); *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 20. If the nonmovant cannot produce facts that establish each element of his cause of action, summary judgment for the movant is proper. *Freedberg. v. Ohio National Insurance Company*, 2012 IL App (1st) 110938, ¶¶ 25-26.

¶ 41    In opposing a summary judgment motion, the nonmovant must present facts, not unsupported conclusions, speculation, conjecture, guess, or opinions, which are all insufficient to withstand summary judgment. *In re Estate of Crawford*, 2019 IL App (1st) 182703, ¶ 39. The facts presented by the nonmovant in opposition to a motion for summary judgment must be competent facts under the applicable law. *Wiszowaty v. Baumgard*, 257 Ill. App. 3d 812, 819 (1994). Any evidence that would be inadmissible at trial cannot be considered in a summary judgment proceeding. *Watkins v. Schmitt*, 172 Ill. 2d 193, 203-04 (1996); *Zamora v. Lewis*, 2019 IL App (1st) 181642, ¶ 67.

¶ 42    Where, as here, the parties have filed cross-motions for summary judgment, they have conceded that there are no genuine issues of material fact and have agreed that only questions of law are involved. *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 24. In such a situation, the parties request that the court decide the issues as a matter of law. *Id.* However, the mere filing of cross-motions does not preclude a determination that triable questions of material fact exist. *Andrews v. Cramer*, 256 Ill. App. 3d 766, 769 (1993). Partial summary judgment may be granted whenever there is no material factual dispute as to any major issue in a case, even if substantial controversy exists with respect to other issues. *Gleicher, Friberg & Associates, M.D., S.C. v. University of Health Sciences, Chicago Medical School*, 224 Ill. App. 3d 77, 87 (1991). We review *de novo* the trial court's judgment on cross-motions for summary judgment. *Pobuda*, 2014 IL 116717, ¶ 24; see also *Thomas v. Weatherguard Construction Co., Inc.*, 2015 IL App (1st) 123470, ¶ 63 (under *de novo* review, the reviewing court performs the same analysis the trial court would perform).

¶ 43                    C. Trustee's Discretion and Immunity

¶ 44    On appeal, Robert argues the trial court erred when it granted Glenview's summary judgment motion against him and denied his summary judgment motion against Glenview because he presented sufficient facts to meet his burden to show the necessity and grounds for the declaratory and injunctive relief requested in all three counts of his operative pleadings.

¶ 45    First, he argues Glenview should reimburse the trust for its litigation and trustee fees and reimburse him for the litigation expenses he incurred in prosecuting his claim that Glenview allegedly failed to timely comply with his demand for an accounting. According to Robert,

Glenview (1) belatedly complied with his demand for an accounting in May 2017, after the trust and Robert incurred significant litigation expenses, (2) falsely asserted that he refused to provide his mailing address, and (3) failed to comply with its duty of accounting based on the information available through electronic access on Glenview's Trustview website. Robert contends the trial court should have ordered Glenview to reimburse/disgorge the fees and costs the trust incurred in Glenview's defense of this claim, reimburse the trust for Glenview's trustee fees, and reimburse Robert for the attorney fees and costs he incurred in successfully prosecuting this claim.

¶ 46     Second, Robert argues Glenview breached its fiduciary duty based on its conduct during the accounting and its biased and disparate treatment of Robert and Leslie regarding trust disbursements. Specifically, Robert argues that Glenview gave false and pretextual reasons for denying Robert's $7500 claim for out-of-pocket medical expenses, and failed to properly monitor the disbursements to Leslie to guard against misappropriation of trust assets for the benefit of her nonbeneficiary spouse. Robert argues that Glenview's removal as successor trustee is necessary due to irreconcilable differences.

¶ 47     Third, Robert argues that Glenview is not a valid successor trustee because (1) either Mr. Saichek was mentally incompetent to lawfully execute the 2013 successorship document or his signature on that document was not genuine, and (2) Glenview failed to timely comply with the trust provisions regarding bypassing a designated successor trustee before Glenview assumed that role.

¶ 48     In response, Glenview argues that the trial court properly granted summary judgment in its favor and denied summary judgment to Robert because Glenview has complete immunity under

the terms of the trust and did not engage in any fraud, gross negligence, or willful misconduct. Glenview contends that the trust settlor knew that her trustee would have to make difficult decisions and disparate distributions respecting the two beneficiaries due to their substantially different life circumstances—one is a lawyer and the other is disabled. Accordingly, the settlor gave the trustee sweeping personal immunity from any lawsuit. The trust instrument mandates unequivocally that the trustee cannot be held liable for errors in judgment or for any acts or omissions unless they constitute fraud, gross negligence or willful misconduct.

¶ 49    The precise language of the trust is:

> "7.8A. No Trustee or former Trustee (collectively referred to in this Agreement as 'Indemnified Group') shall be personally liable for: any liability or obligation of the Trust under any agreement; errors in judgment (including action in reliance on the opinion of legal counsel for public accountants, or believing in good faith that he or she is acting within the authority granted in this Agreement); any acts or omissions that do not constitute fraud, gross negligence, or willful misconduct; or the negligence, whether omission or commission, dishonesty or bad faith of any employee or agent selected or supervised by a member of the Indemnified Group with reasonable care or of any other member of the Indemnified Group."

¶ 50    Furthermore, the statutory Trust and Trustee's Act (Act), in effect at the time of the creation of the subject trust in 2003, and in 2016 to 2019 at the time of entry of the orders under review, specifically provided that such an exculpatory clause is enforceable:

"(1) A person establishing a trust may specify in the instrument the *** immunities applicable to the trustee, beneficiary and others and those provisions where not otherwise contrary to law shall control, notwithstanding this Act. The provisions of this Act apply to the trust to the extent that they are not inconsistent with the provisions of the instrument.

(2) This Act applies to every trust created by will, deed, agreement, declaration or other instrument ***." 760 ILCS 5/3(1), (2) (West 2018).

¶ 51 The current statute, the Illinois Trust Code (Code), which repealed the Act effective January 1, 2020, similarly provides:

"The trust instrument may specify the rights, powers, duties, limitations, and immunities applicable to the trustee, beneficiary, and others and those terms, if not otherwise contrary to law, shall control, except to the extent specifically provided otherwise in this Section. The provisions of this Code apply to the trust to the extent that they are not inconsistent with specific terms of the trust." 760 ILCS 3/105(a) (West 2020).

¶ 52 Under the Code, a term in the trust instrument "relieving the trustee of liability for breach of trust is unenforceable to the extent that it: (1) relieves the trustee of liability for a breach of trust committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries; or (2) was inserted as a result of an abuse by the trustee of a fiduciary or confidential relationship to the settlor." 760 ILCS 3/1008(a) (West 2020). There is no competent evidence in this case that any of these restrictions are applicable. The Code also provides circumstances under which an exculpatory term drafted or caused to be drafted by the trustee is not valid (760 ILCS 3/1008(b) (West 2020)), but nothing in the record makes that section

applicable here. The exculpatory language in the Saichek trust was not drafted or caused to be drafted by Glenview, which did not become the successor trustee until 10 years after the trust was created.

¶ 53    Illinois reviewing courts enforce exculpatory and immunity clauses in trust instruments designed to relieve the trustee from liability so long as the trustee's breach of the trust was neither recklessly indifferent to the rights of a beneficiary, nor intentional, nor in bad faith. *Tucker v. Soy Capital Bank and Trust Co.*, 2012 IL App (1st) 103303, ¶¶ 38-39; *MAJS Investment, Inc. v. Albany Bank & Trust Co.*, 175 Ill. App. 3d 478, 481 (1988).

¶ 54    As between the former Act and the current Code, the applicable statute that governs here is the Code. See *Bates v. Board of Education, Allendale Community Consolidated School District No. 17*, 136 Ill. 2d 260, 268-69 (1990) ("Where the legislature changes the law pending an appeal, the case must be decided by the reviewing court as it then exists, not as it was when the judgment was entered in the lower court."). By its terms, the current Code applies retroactively to trusts created before its effective date of January 1, 2020 (760 ILCS 3/1506(1) (West 2020)), subject to a few exceptions, such as the former Act applies to judicial proceedings commenced before the effective date if application of the current Code would substantially interfere with the effective conduct of the judicial proceeding or prejudice the rights of the parties (760 ILCS 3/1506(4) (West 2020)). Also, rules of construction or presumption provided in the Code do not apply to a trust created before the effective date if there is a clear indication of a contrary intent in the trust instrument. 760 ILCS 3/1506(5) (West 2020).

¶ 55    Under either the Act or the current Code, the outcome in this case is the same. Both statutes codify the overwhelming right of every settlor of a trust to immunize her trustee, which is precisely what the settlor here did. Robert attacks acts by Glenview that were immunized matters of judgment, and Robert failed to present any evidence in the record that Glenview engaged in any conduct amounting to fraud, gross negligence, reckless indifference, willful misconduct or bad faith. Just the opposite, the record demonstrates that Glenview acted properly. Glenview and its officers attempted in good faith to accommodate both Robert's demands and his and Leslie's unique situations and needs, and none of Glenview's challenged conduct rises to the level of actionable misconduct.

¶ 56    A court's objective in construing a trust is always to ascertain and give effect to the intent of the settlor. *American Rubber & Plastics Corp. v. First National Bank of Chicago*, 50 Ill. 2d 172, 174 (1971); *Hillyer v. Hillyer*, 148 Ill. App. 3d 399, 403 (1986). When the language of the particular trust instrument is clear, the settlor's intent must be determined from that language itself, without resort to any extrinsic evidence or any aid in interpretation. *In re Estate of Lee*, 2017 IL App (3d) 150651, ¶ 32. In interpreting a trust, courts are bound by the intent of the settlor as evidenced by the plain meaning of the language contained in the trust document. *National City Bank of Michigan/Illinois v. Northern Illinois University*, 353 Ill. App. 3d 282, 288 (2004). The court is not to consider the justice or propriety of a provision in a trust instrument; that is a matter the law leaves to the settlor to determine. *Id*. Here, settlor Ms. Saichek expressly mandated in the trust instrument that the trustee shall not be held personally liable for any error in judgment

whatsoever, nor shall the trustee be held liable for any act or omission, unless it constituted fraud, gross negligence, or willful misconduct.

¶ 57   Gross negligence, willful misconduct and willful and wanton conduct are all legally interchangeable terms. *Moon v. Smith*, 276 Ill. App. 3d 958, 966 (1995). They mean a course of action done with either actual intention to harm or conscious disregard for, or indifference to the rights of the other person. *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 451 (1992). Fraud consists of a false statement of material fact, known by the party making the statement to be false, and accompanied by detrimental reliance by the other party. *Bangaly v. Baggiani*, 2014 IL App (1st) 123760, ¶ 206; *Butler v. Harris*, 2014 IL App (5th) 130163, ¶ 28.

¶ 58   At best, Robert's claims against Glenview assert errors in judgment or erroneous acts and omissions, but those errors, even if they existed, are immunized by the trust instrument and there is no evidence that Glenview did anything that constituted fraud, gross negligence, or willful misconduct. Robert failed to meet his burden to withstand summary judgment by presenting a factual basis that would arguably entitle him to a judgment on his claims that challenged Glenview's conduct concerning the trust accounting, its exercise of its judgment regarding disbursements to the beneficiaries, and its designation as the successor trustee.

¶ 59                    D. Genuine Issues of Material Fact

¶ 60   Despite the parties having filed cross-motions for summary judgment, whereby they concede that there are no genuine issues of material fact and agree that only questions of law are involved (see *Nationwide Financial, LP*, 2014 IL 116717, ¶ 24), Robert argues that genuine issues

of material fact on all three counts of his operative pleadings preclude entry of summary judgment in favor of Glenview.

¶ 61                                    1. The Accounting

¶ 62    Regarding Robert's claim concerning the accounting, he argues that genuine issues of material fact exist concerning his claims that he did not receive a proper, complete and timely accounting until after nearly two years of expensive litigation. Specifically, he argues that Glenview willfully or in bad faith breached its duty of accounting by falsely claiming that (1) Glenview could not mail the requested information to Robert because he failed to provide Glenview with his permanent mailing address and (2) he could have received the necessary account information electronically via access to Glenview's Trustview website.

¶ 63    The law regarding a trust accounting provides as follows:

"It has been established that providing his purpose is proper, a beneficiary has the right to inspection on demand to see that the trust is properly executed. [Citation.] In [*Wallace v. Malooly*, 4 Ill. 2d 86 (1954)], the court quoted a commentary from Restatement of Trusts § 173 (1935) which stated: '*** the beneficiary is always entitled to such information as is reasonably necessary to enable him to enforce his rights under the trust or to prevent or redress a breach of trust.' [Citation.] The beneficiary of a trust is entitled to learn from his trustee 'what property came into his hands, what has passed out, and what remains therein, including all receipts and disbursements in cash, and the sources from which they came, to whom paid and for what purpose paid.' [Citation.] The beneficiary's right to obtain necessary information from the trustees is broad. When a party seeks an accounting, the

- 21 -

trial court must make two separate and distinct determinations: that an accounting is required and that a sum certain is due. These determinations are traditionally made in separate hearings with separate discovery phases. [Citation.]" *McCormick v. McCormick*, 118 Ill. App. 3d 455, 461-62 (1983).

¶ 64    Our review of the record shows that Robert insisted due to his frequent travel that trust documents must be sent to him by email and Glenview attempted to accommodate his request, even though it was the bank's policy to send beneficiaries and clients account information through the U.S. mail, by providing him access initially in May 2014 to Glenview's electronic portal and later by sending him account statements through Glenview's secure electronic mail system. Moreover, Glenview presented evidence showing that despite making these accommodations to Robert, he did not login to the electronic portal to access the statements. Any delay in Robert's receiving information regarding the trust was due to his own behavior and was not due to any fraud, gross negligence or willful misconduct, or any other misconduct by Glenview. Instead, the record shows that Glenview attempted in good faith to accommodate Robert. Furthermore, Robert failed to establish at the hearing before the trial court that the information Glenview made available to him electronically was not as complete as the information contained in Glenview's mailed account statements. Finally, the accounting established that Glenview was not required to reimburse the trust due to any missing funds. The undisputed facts established that Glenview did not breach any fiduciary duty to Robert with respect to his request for an accounting. We reject Robert's claim that a genuine issue of material fact precludes entry of summary judgment in favor of Glenview on Robert's claim for an accounting.

¶ 65                    2. Breach of Fiduciary Duty

¶ 66    Regarding Robert's claim that Glenview breached its fiduciary duty to him by its biased treatment of him compared to Leslie, Robert argues that genuine issues of material fact exist concerning Glenview's fabricated reason for denying Robert's medical claim, *i.e.*, his refusal to provide his personal financial information, because Glenview did not rely on Leslie's financial information when Glenview determined the distributions it made to her.

¶ 67    A breach of a fiduciary duty claim must allege and ultimately prove a fiduciary duty on the part of the defendant; a breach of that duty; damages; and a proximate cause between the breach and the damages. *Martin v. Heinold Commodities, Inc.*, 163 Ill.2d 33, 53 (1994). "A trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degrees of fidelity and utmost good faith." *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 615 (2007). "The intent of the settlor is the initial question to be addressed before determining the secondary issue of whether the trustees acted in good faith." *Goddard v. Continental Illinois National Bank & Trust Co. of Chicago*, 177 Ill. App. 3d 504, 509 (1988). A trustee should be impartial to its trust beneficiaries, but if the terms of the trust authorize unequal distributions a trustee is not being unlawfully impartial when it makes distributions to one beneficiary and not the other and thus favors one beneficiary over another. *Spencer v. Di Cola*, 2014 IL App (1st) 121585, ¶ 37. The subject trust expressly recited the settlor's desire "that the Trustee considers both the general financial resources and requirements of the beneficiary and the ability of the beneficiary to deal

with and manage the money or property involved" when using its discretion in making distributions to the beneficiaries.

¶ 68    To support his claim, Robert refers to his and his wife's affidavits, which averred that Leslie told them that her medical providers wrote off or discounted her medical bills and she used the excess funds she received as reimbursement from Glenview for other expenses that were not intended for the purposes of the trust. Robert's and his wife's affidavits, however, are hearsay and do not constitute admissible evidence to support Robert's claims concerning the existence of material issues of fact. See *Wiszowaty*, 257 Ill. App. 3d at 819 (the facts presented by the nonmovant in opposition to a motion for summary judgment must be competent facts under the applicable law); *Zamora*, 2019 IL App (1st) 181642, ¶ 67 (any evidence that would be inadmissible at trial cannot be considered in a summary judgment proceeding).

¶ 69    Furthermore, our review of the record establishes that when Glenview accepted its position as successor trustee, its officers properly had conversations with the attorneys for the prior trustee concerning the beneficiaries' status and the history of distributions from the trust. Relying on the discretionary provisions of the trust, Glenview made the decision to temporarily continue the prior trustee's practice of making very modest monthly payments and various distributions to Leslie until Glenview received the requested financial information from both beneficiaries. All this was within Glenview's discretion as trustee and did not raise any genuine issue of material fact as to bias. Leslie provided Glenview with the requested financial information and Robert did not. Leslie also stopped by the Glenview monthly to speak with bank personnel. While there, she regularly provided Glenview with documentation to accompany her requests for a distribution from the trust.

She also regularly discussed her general expenses and financial situation with bank personnel. We reject Robert's claim that a genuine issue of material fact precludes the entry of summary judgment in favor of Glenview on his breach of fiduciary duty claim.

¶ 70                                3. Designation of Successor Trustee

¶ 71    Regarding Robert's claim that Glenview's designation as the successor trustee was unlawful, he argues that genuine issues of material fact exist concerning whether Mr. Saichek was mentally competent to make Glenview a successor trustee, whether Mr. Saichek's signature on the 2013 successorship document was genuine, and whether Glenview complied with the trust provisions concerning its appointment as successor trustee.

¶ 72                                a. Mr. Saichek's Mental Competence

¶ 73    First, Robert argues that Mr. Saichek was not mentally competent to execute the successorship document because he was 89 years old and suffering from advanced Alzheimer's disease or severe age-related dementia. To support this argument, Robert submitted to the trial court affidavits from himself and his wife pursuant to Supreme Court Rule 191 (eff. Jan. 4, 2013) wherein they averred that one or two years before Mr. Saichek resigned and signed the challenged successorship document, Leslie told Robert and his wife that Mr. Saichek exhibited signs of severe dementia, memory loss and confusion, including not knowing the day of the week or recognizing Leslie. Robert averred that in July 2015 he spoke with Paula Jacobs, a close friend of Mr. Saichek for over 40 years, and she said that he did not recognize her when she saw him at a restaurant in June 2015 even after she identified herself. Robert also averred that he believed in good faith that Mr. Saichek's primary treating physician would find him unable to act as trustee or understand the

challenged 2013 successorship document he purportedly signed. Furthermore, Robert averred that he anticipated retaining an expert medical witness to testify that Mr. Saichek was unable to act as trustee or competently sign the challenged 2013 document.

¶ 74    Every person is presumed to be sane until the contrary is shown. *Kuster v. Schaumburg*, 276 Ill. App. 3d 220, 227 (1995). Mental incapacity must be proven and cannot be inferred from old age, loss of memory, physical illness, feeble health, partial impairment of mental faculties, or otherwise. *Boswell Memorial Hospital v. Bongiorno*, 314 Ill. App. 3d 620, 622 (2000). The burden of overcoming the presumption and proving mental incapacity lies with the party who seeks to set aside the transaction. *Id*. That party who bears the burden must prove that the person alleged to be incompetent was unable to comprehend the nature and effect of the transaction and protect his own interests. *Id.* A nonexpert witness may not state an opinion as to a person's mental capacity to execute an instrument when the witness did not see the person on the day of execution of the instrument. *Trojcak v. Hafliger*, 7 Ill. App. 3d 495, 500 (1972). For a lay witness to prove lack of capacity, he:

> "must testify to sufficient facts and circumstances to afford reasonable ground for a belief in the soundness or unsoundness of mind of the person whose mental capacity is questioned and to indicate that his opinion is not a guess, suspicion, or speculation. He must be able to intelligently express an opinion. Superficial opinions based on casual impressions or observations on chance meetings are of little value." (Internal citations omitted.) *Butler v. O'Brien*, 8 Ill. 2d 203, 210 (1956).

The layperson's opinion must be based on observations sufficiently contemporaneous to the challenged transaction to be admissible. *Id*. at 211.

¶ 75    Robert's and his wife's affidavits that purport to state what Leslie and Mrs. Jacobs told them are out of court declarations offered to prove the truth of the matter asserted. Consequently, those affidavits are hearsay and not admissible evidence. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015); Ill. R. Evid. 802 (eff. Jan. 1, 2011); *Taluzek v. Illinois Central Gulf Railroad Co.*, 255 Ill. App. 3d 72, 84 (1993); see also *Zamora*, 2019 IL App (1st) 181642, ¶ 67 (any evidence that would be inadmissible at trial cannot be considered in a summary judgment proceeding). Furthermore, Robert's affidavit stating that he believed Mr. Saichek's physician would testify that Mr. Saichek was mentally incompetent, and that Robert intended to retain an expert medical witness to testify that Mr. Saichek was incompetent are not valid substitutes for the affidavit, deposition or documents from the primary physician and the expert. Supreme Court Rule 191(b) does not make admissible the party's statement of what the witness would say. In addition, the affidavits of Robert and his wife did not reference any relevant personal interactions with Mr. Saichek on or about November 8, 2013, the date he signed the challenged successorship document. Robert's affidavit did not present any facts or discovery which, if obtained, would have met the high burden to defeat the presumption that Mr. Saichek was competent. At most, Robert presented anecdotal observations underscored by hearsay testimony that would be inadmissible.

¶ 76                                    b. Genuine Signature

¶ 77    To support his claim that Mr. Saichek's signature on the challenged November 2013 document was not genuine, Robert submitted his affidavit and opined as a lay person based on his

long-standing familial relationship with Mr. Saichek and familiarity with his signature that his purported signature on the challenged November 2013 document did not look genuine or authentic.

¶ 78    Robert's self-serving affidavit with no other evidence does not create a genuine issue of material fact. See *National Union Fire Insurance Co. of Pittsburgh, PA v. DiMucci*, 2015 IL App (1st) 122725, ¶¶ 2, 68; *Gassner v. Raynor Manufacturing Co.*, 409 Ill. App. 3d 995, 1005 (2011). An affidavit from a nonexpert, in support of or in opposition to a summary judgment motion, must be based on facts, not upon opinions. S. Ct. R. 191(a); *Robidoux v. Oliphant*, 201 Ill. 2d 324, 330-31 (2002).

¶ 79    A lay witness may testify only as to facts on which that lay witness has personal knowledge. Ill. R. Evid. 602 (eff. Jan. 1, 2011); *Selby v. O'Dea*, 2020 IL App (1st) 181951, ¶ 163. Robert contends that Mr. Saichek's signature on the November 8, 2013 successorship document is not genuine. However, two day earlier, on November 6, 2013, when Mr. Saichek signed the trust merger document, his signature was authenticated by a duly commissioned notary public. The notarial certification on the November 6, 2013 document is *prima facie* proof of the execution of that instrument by Mr. Saichek. See 5 ILCS 312/6-102(a), (c) (West 2020); *In re Estate of Alfaro*, 301 Ill. App. 3d 500, 510 (1998); *Krueger v. Dorr*, 22 Ill. App. 2d 513, 528 (1959); *Spencer v. Razor*, 251 Ill. 278, 287 (1911).

¶ 80    Nothing in the record indicates that the instant notary public on November 6, 2013, did not comply with the Illinois Notary Public Act. Indeed, the notary states on the instrument that Mr. Saichek appeared before her and that she personally knew him to be the person who signed the instrument that day. *Prima facie*, the person signing the transfer and merger instrument was

Mr. Saichek. His signature on the transfer and merger document is a true and genuine exemplar signature. Crucially, just two days later, on November 8, 2013, Mr. Saichek signed the document on which Robert challenges Mr. Saichek's signature. Robert, however, offers no facts to show that the two identical-looking signatures are not identical and genuine.

¶ 81                                                c. Mr. Jacob's Mental Competence

¶ 82    Robert also argues that Glenview's appointment as successor trustee purportedly is invalid because there was no physician evidence that Gary Jacobs, the successor trustee named in the trust instrument, was unable to act, and that the trust instrument requires such evidence. This argument lacks merit. The affidavits of Gary Jacobs' wife, Paula Jacobs, and his physicians, Drs. Denenberg and Gelyana, all conclusively established that Gary Jacobs was suffering from Alzheimer's dementia and was incompetent to become a trustee when Mr. Saichek resigned as trustee.

¶ 83    Contrary to Robert's arguments on appeal, the affidavits of Paula Jacobs, Dr. Denenberg, and Dr. Gelyana all comply with Supreme Court Rule 191(a). Rule 191(a) is satisfied if "from the document as a whole, it appears the affidavit is based on the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents at trial." *Jackson v. Graham*, 323 Ill. App. 3d 766, 777 (2001). The statements in Paula Jacob's affidavit were based upon her personal observations of her husband's health and mental state.

¶ 84    Regarding the physician affidavits, paragraph 14.17 of the trust instrument states as follows:

        "If the competency of an Individual is being assessed for purposes of determining

        his or her ability to act as a Trustee, then, notwithstanding anything contained in this

Section to the contrary, the determination of Incompetency shall be made in writing only by the principal physician then attending to that Individual's care and one other physician who has examined that Individual."

¶ 85    The two medical affidavits were submitted to comply with this provision. Dr. Denenberg's affidavit states that he was Gary Jacobs' principal doctor, and that Gary Jacobs suffered from dementia since Dr. Denenberg first saw Gary Jacobs as a patient over seven years prior, in 2008. Dr. Denenberg stated that during those years Gary Jacobs had not been competent to handle any fiduciary duty or otherwise execute the position of trustee of any personal or other trust. Dr. Gelyana's affidavit likewise demonstrated that when he saw Gary Jacobs as Jacobs' physician on September 14, 2009, Jacobs was not mentally fit to handle any fiduciary duty or otherwise execute the position of trustee of any personal or other trust. Dr. Gelyana examined Jacobs and found that he was expressing behavior problems and suffering from symptoms endorsing a diagnosis for dementia, and his judgment for everyday life was severely impaired.

¶ 86    Dr. Gelyana's affidavit comports with the language of the trust, which requires a determination of incompetency in writing by a physician who has examined the individual. Gelyana's affidavit is based upon his personal observation, medical evaluation, and diagnosis of Gary Jacobs. Dr. Gelyana is a diplomat of the American Board of Psychiatry and Neurology and a Senior Clinician Educator at the University of Chicago School of Medicine. Both medical affiants had personal professional interactions with Gary Jacobs, and both affidavits are based on personal knowledge. These affidavits show that the affiants are experts and can competently testify to the facts presented in their affidavits.

¶ 87    Robert argues that Dr. Gelyana's affidavit was flawed because he examined and diagnosed Gary Jacobs in 2009 and Mr. Saichek resigned as trustee in 2013. Robert seems to imply that after 2009, Gary Jacobs could somehow have recovered from the incurable and progressive Alzheimer's disease. However, the trust does not require that the medical doctor conduct a contemporaneous examination. The trust instrument only requires a competency determination by the person's principal physician, then attending to his care, and one other physician who has examined that person. Thus, the trust merely requires an affidavit from a physician that examined the person's competency at some previous time. Dr. Gelyana evaluated Gary Jacobs' mental condition, and he determined that Jacobs was unable to competently handle any fiduciary duty or otherwise execute the position of trustee. Such examination and determination are all that is required under the language of the trust.

¶ 88    We reject Robert's assertion that genuine issues of material fact preclude the entry of summary judgment in favor of Glenview on Robert's claim that Glenview's appointment as successor trustee was unlawful.

¶ 89    We conclude that the trial court properly entered summary judgment in favor of Glenview and against Robert on all three counts of his operative pleadings and properly denied summary judgment to Robert.

¶ 90                    E. Supreme Court Rule 137 Sanctions

¶ 91    Finally, Robert argues the trial court abused its discretion by denying his motion for Rule 137 sanctions and contempt findings against Glenview. Robert sought sanctions against Glenview based on alleged perjury contained in its supporting documents of its summary judgment motion.

Specifically, Robert alleged that Ms. Polcyn falsely claimed that he steadfastly refused to provide Glenview with his permanent mailing address; Glenview gave him access to Trustview, which provided full accounting information; and Glenview disbursed $1000 monthly payments to Leslie when she completed Glenview's financial paperwork.

¶ 92    Under the abuse of discretion standard of review, Robert must show that the trial court acted arbitrarily, without the employment of conscientious judgment, exceeded the bounds of reason, and ignored recognized principles of law; or that no reasonable person would take the position adopted by the lower court. See *Kagan v. Waldheim Cemetery Co.*, 2016 IL App (1st) 131274, ¶ 53. In determining whether the trial court abused its discretion, the reviewing court does not substitute its judgment for that of the lower court, nor does the reviewing court determine whether the lower court exercised its judgment wisely. *Maggi v. RAS Development, Inc.*, 2011 IL App (1st) 091955, ¶ 61.

¶ 93    The purpose of Rule 137 is to prevent parties from abusing the judicial process by imposing sanctions on litigants who file vexatious and harassing actions based upon unsupported allegations of fact or law. *Burrows v. Pick*, 306 Ill. App. 3d 1048, 1050 (1999). The party seeking to have sanctions imposed by the court must demonstrate that the opposing litigant made untrue and false allegations without reasonable cause. *Id.* at 1050-51. Rule 137 is penal in nature and therefore strictly construed. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 487 (1998); *Mohica v. Cvejin*, 2013 IL App (1st) 111695, ¶ 47.

¶ 94    As discussed in detail above, the trial court resolved all three counts of Robert's operative pleadings by granting summary judgment in Glenview's favor. Given the nature of those rulings

in favor of Glenview and our review of the record, it is clear that Rule 137 sanctions against Glenview were not warranted and no evidentiary hearing was required in order to support a denial of relief. See *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 250 Ill. App. 3d 149, 154-55 (1993).

¶ 95                                    III. CONCLUSION

¶ 96    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 97    Affirmed.